THE PEOPLE *ex rel.* Robert Tilton, State's Attorney, Appellant, *vs.* CHARLES W. MACKEY *et al.* Appellees.

*Opinion filed June 21, 1912—Rehearing denied October 3, 1912.*

1. QUO WARRANTO—*the existence of a corporation de facto is no defense to quo warranto by the People.* In a *quo warranto* proceeding instituted by the People against persons alleged to be usurping the functions of a corporation the defendants cannot set up the existence of a corporation *de facto,* but they must either disclaim, or justify by showing a substantial compliance with the statute providing for the organization of corporations, and a defective or equitable title will not avail against the People.

2. CORPORATIONS—*right to be a corporation is acquired from the State.* The right to be a corporation is not a natural or civil right of any person but such right can only be acquired from the State, and it is a matter exclusively within the power of the legislature to determine whether it will grant or withhold the privilege of forming corporations.

3. SAME—*legislature may prescribe terms upon which corporations may be organized.* In granting the privilege to form corporations the legislature may, by general law, impose such terms and conditions as it sees fit, and it must be presumed that the legislature will only impose such conditions as are considered necessary to safeguard the interests of people transacting business with such corporations.

4. SAME—*failure to file final certificate for record within two years is fatal.* Failure to comply with section 4 of the general Incorporation law by filing for record in the county recorder's office the final certificate of incorporation within two years from its date is fatal to the legal existence of the corporation, and, in a *quo warranto* proceeding by the State, justifies a judgment of ouster.

5. SAME—*filing a certificate of incorporation more than two years after its date is without effect.* Filing the final certificate of incorporation for record more than two years after its date does not give life to the corporation, as, by the express terms of the statute, such failure is itself a revocation of the license, and the only way in which the corporation can be resuscitated is by a complete reorganization. (*Marshall* v. *Keach,* 227 Ill. 35, explained and language limited.)

6. SAME—*neither laches nor estoppel can be invoked in a quo warranto proceeding by the People.* In a *quo warranto* proceeding by the People against certain persons for usurping the franchises of a private corporation, neither lapse of time nor circumstances

out of which an estoppel might arise as against an individual have any application.

7. COURTS—*discretion to grant or refuse leave to file information is not arbitrary.* The discretion to grant or refuse leave to file an information in *quo warranto* is not an arbitrary personal discretion of the judge but is the sound legal discretion of the court, and the exercise of such discretion is subject to review.

APPEAL from the Circuit Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding.

ROBERT TILTON, (BELLATTI, BARNES & BELLATTI, of counsel,) for appellant:

In a suit by the People, on the relation of the State's attorney, by information in the nature of a *quo warranto,* charging the defendants with unlawfully usurping to be a private corporation, the defendants must either disclaim or justify, and if they attempt to justify they must set up facts which show a clear legal title to the franchise claimed. *Clark* v. *People,* 15 Ill. 213; *Gunterman* v. *People,* 138 id. 518; *Railroad Co.* v. *People,* 84 id. 426; *Place* v. *People,* 192 id. 160; *Carrico* v. *People,* 123 id. 198; *Catlett* v. *People,* 151 id. 16; *People* v. *Bruennemer,* 168 id. 482; *People* v. *Karr,* 244 id. 374.

The filing for record of the certificate of final organization in the office of the recorder of the county where the principal office of the company is located is a condition precedent to the corporation becoming organized or being authorized to transact any business. Rev. Stat. chap. 32, sec. 4; 10 Cyc. 227; *Lovering* v. *McLaughlin,* 161 Ill. 417; *Diversey* v. *Smith,* 103 id. 378.

Conditions that are made conditions precedent to the corporation becoming fully organized, with authority to proceed to do business, must be strictly complied with or there is no corporation. 10 Cyc. 227, 254; *Bigelow* v. *Gregory,* 73 Ill. 197; *Attorney General* v. *Hanchett,* 42 Mich. 436; *Capps* v. *Prospecting Co.* 24 L. R. A. 259.

255 — 10

When the meaning of a statute is clear and its provisions are susceptible of but one interpretation that sense must be accepted as law. Its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction. Sutherland on Stat. Const. par. 238.

The court has no authority to construe away the plain language of the act as not meaning what it plainly expresses. *People* v. *Improvement Co.* 103 Ill. 491; *People* v. *Shedd*, 241 id. 155.

When the legislature has acted upon a subject upon which it has power to legislate, the public policy of the State is what the statute passed by the legislature indicates. *Harding* v. *Glucose Co.* 182 Ill. 551; *People* v. *Shedd*, 241 id. 155.

This proceeding being against the defendants for usurping to be a private corporation, lapse of time constitutes no bar in this case' because the public is interested, and for the same reason the doctrine of estoppel has no application. *Catlett* v. *People*, 151 Ill. 16; *People* v. *Geary*, 196 id. 310; *People* v. *Car Co.* 175 id. 125; *People* v. *Shedd*, 241 id. 155; *People* v. *Cowan*, 247 id. 357.

A plea alleging that a pretended corporation has done business for years with the knowledge of the officers of the State, etc., creates no estoppel as against an information in the nature of a *quo warranto* by the People, on the relation of the State's attorney. *People* v. *Shedd*, 241 Ill. 155; *People* v. *Cowan*, 247 id. 357.

WORTHINGTON & REEVE, and KIRBY, WILSON & BALDWIN, for appellees:

A failure to record the certificate of incorporation within two years does not, *ipso facto,* revoke the license and render all proceedings under it void, but it remains a corporation *de facto,* with power to contract, sue and be sued,

etc. *Bushnell* v. *Ice Machine Co.* 138 Ill. 67; *Marshall* v. *Keach,* 227 id. 35; 1 Thompson on Corp. sec. 241.

A corporation is a *de facto* one where the law authorizes such corporation and where the company has made an effort to organize under that law and is transacting business in a corporate name. 1 Cook on Stock and Stockholders, (3d ed.) sec. 234; 8 Am. & Eng. Ency. of Law, (2d ed.) 747; *Marshall* v. *Keach,* 227 Ill. 35; *Hudson* v. *Green Hill Seminary,* 113 id. 618.

If the certificate of incorporation is recorded in the proper county after the expiration of two years, the corporation *de facto* is at once converted into one *de jure*. *Marshall* v. *Keach,* 227 Ill. 35.

Courts will not compel the doing of useless and senseless things. All the requirements of the statute have now been complied with by the Jacksonville Water-Works Company to make it a corporation *de jure*. If deprived of its corporate existence by the judgment of this court its directors might reorganize to-morrow by the same process already followed. A judgment of ouster against its directors would not benefit the public, but it would injure the company and its innocent creditors.

If the State is to be protected from the defense of limitations or *laches* its interest must be actual and must be made to appear by the pleadings or evidence, otherwise the suit must fail if the facts are such as to bar a private individual. *Curtner* v. *United States,* 149 U. S. 662; *United States* v. *Tin Co.* 125 id. 273; *United States* v. *Beebe,* 127 id. 338.

Courts have a very broad discretion in granting or denying the remedy by *quo warranto,* which is not a matter of absolute right. The court will look to the merits of the case to ascertain whether the People in their sovereign capacity or an individual is the real party in interest. The court may consider the position or motives of the relator and the necessity or policy of granting the remedy. *Peo-*

*ple* v. *Hepler,* 240 Ill. 196; *People* v. *Crowley,* 250 id. 282; *People* v. *Schnepp,* 179 id. 305.

Where the State is only a formal party and the suit is brought in its name to enforce the rights of individuals and no interest of the government is involved, the defense, of *laches* and limitations will be sustained as though the government was out of the case and the litigation was carried on, in name as in fact, for the benefit of private parties. *United States* v. *Beebe,* 127 U. S. 338; *United States* v. *DesMoines,* 142 id. 510; *United States* v. *Bell Telephone Co.* 167 id. 234.

The principle that the State may be barred from maintaining an action in *quo warranto* even when the Attorney General institutes the action and the public policy of the State is involved, was maintained in *People* v. *Pullman Car Co.* 175 Ill. 125.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On the 21st day of April, 1911, Robert Tilton, as State's attorney of Morgan county, presented a petition to the Hon. Owen P. Thompson, circuit judge, alleging that Charles W. Mackey and others named assumed to be a private corporation for profit, under the name of "The Jacksonville Water-Works Company," and to transact business as such without any lawful warrant or authority, and prayed for leave to file an information in the nature of a *quo warranto* in the name of the People of the State of Illinois, and that process might issue against the defendants. Leave being granted the information was filed. The information charged that Charles W. Mackey and other defendants named, since about January 3, 1905, in said county, have unlawfully assumed, without warrant, charter or title, to be a corporation for profit under the laws of the State, by the name of "The Jacksonville Water-Works Company," and that said alleged corporation claimed a capital stock of $350,000, with its principal office in Jackson-

ville, Morgan county, and that the defendants continued to transact business, and have usurped, and still do usurp, to be a corporation, to the damage of and against the peace and dignity of the People of the State of Illinois. The defendants, having been served with summons, appeared and made a motion to set aside the order granting leave to file the information. This motion was afterwards withdrawn. Defendants then filed two pleas. The first plea purported to be a plea of justification, setting up the certificate of organization issued by the Secretary of State, and alleging that the defendants proceeded to transact business but that some employee neglected to file the final certificate for record within two years from the date of the license, but that such certificate was filed April 17, 1911, and before the commencement of this proceeding. The defendants' other plea set up the facts from which the defenses of estoppel and *laches* are claimed. This plea alleged the steps taken toward the organization of the corporation mentioned in the first plea, and averred that the failure to file the certificate with the recorder of deeds within two years was through the accident or neglect of some employee of the company; that immediately after its incorporation it entered into business in the city of Jacksonville for the purpose of supplying the city and its inhabitants with pure water; that on September 23, 1904, the city council of Jacksonville passed an ordinance granting to Mackey and Gardner and their assigns the right to establish a system of water-works in said city, and that said Mackey and Gardner assigned the said contract to the Jacksonville Water-Works Company in January, 1905, and that said company proceeded to construct a system of water-works at an expense of about $450,000; that by numerous ordinances passed by the city of Jacksonville the corporation was recognized by granting extensions of time within which to complete the installation of the water-works; that the company was engaged in this construction work from January,

1905, until April, 1908, and that commencing September 24, 1908, the company supplied the city of Jacksonville and its inhabitants with all the water required, for a period of six months; that the several matters in this plea were well known to the mayor and city council and to the inhabitants of the city and to the city attorney and State's attorney, and that during all of that time these officials knew, or might have known, that the articles of incorporation were not recorded within two years; that owing to some disagreement between the water-works company and the city of Jacksonville certain litigation is now pending in the circuit court of Morgan county and in the United States Circuit Court for the southern district of Illinois; that the present suit against the corporation in the name of the People is being prosecuted in the interest of the city of Jacksonville in connection with suits now pending between the city and the water-works company, and it is alleged that the same attorneys who are representing the city in its suits against the water-works company appeared as counsel on behalf of the People in this case. From these averments the conclusion is sought to be drawn that the present suit is brought to subserve private interests and that the State is only a nominal party. These pleas were demurred to and the demurrers were overruled. Thereupon the defendants made a motion for leave to re-file their motion to set aside the order granting leave to file the information and to dismiss the suit. This motion was resisted by the People, but the court granted the motion and permitted defendants to re-file the motion to vacate the order granting leave to file the information. Thereupon the court entered a judgment of not guilty, and also granted defendants' motion and set aside the order granting leave to file the information and dismiss the suit. To these several orders the People excepted and prayed an appeal to this court, which was granted.

The errors relied upon for reversal are, that the court erred in overruling the demurrer to the pleas and in finding

the defendants not guilty, and in granting defendants' motion for leave to re-file their motion to set aside the order granting leave to file the information and in granting that motion and in dismissing the suit.

The controlling legal question in this case is raised by the demurrer to the first plea. What is the effect upon the legal existence of a corporation of a failure to have the certificate of complete organization, and a copy of all the papers attached thereto, recorded with the recorder of deeds within two years next after the date of the license issued, permitting the organization of such corporation? That part of section 4 of chapter 32 of Hurd's Statutes of 1908 which is pertinent to this inquiry is as follows: "The Secretary of State shall thereupon issue a certificate of the complete organization of the corporation, making a part thereof a copy of all the papers filed in his office in and about the organization of the corporation, and duly authenticated under his hand and seal of State, and the same shall be recorded in a book for that purpose, in the office of the recorder of deeds of the county where the principal office of such company is located. Upon the recording of the said copy, the corporation shall be deemed fully organized and may proceed to business. Unless such company shall be organized and shall proceed to business as provided in this act within two years after the date of such license, then such license shall be deemed revoked, and all proceedings thereunder void."

If the recording of the certificate and a copy of all the papers attached thereto is a necessary step in the organization of a corporation and a condition precedent to its legal existence, it follows that a failure to comply with such condition within the time and substantially in the manner required by the statute is fatal to the legal existence of the corporation. In a proceeding by *quo warranto* against a corporation instituted by the People of the State it is no answer to such information that there is a *de facto* corpo-

ration. In this proceeding the defendants must either disclaim or justify, and a plea of justification must show a substantial compliance with the statute. A defective or an equitable title will not avail against the public in a suit of this character. *Gunterman* v. *People,* 138 Ill. 518; *Place* v. *People,* 192 id. 160.

In *Loverin* v. *McLaughlin,* 161 Ill. 417, this court had occasion to examine and construe section 4 of the Corporation act, and it was held that the papers to be recorded in the recorder's office were the certificate of the Secretary of State and a copy of all the papers attached thereto. Having thus construed the said section, Mr. Justice Magruder, speaking for the court, on page 425 said: "Recurring to the statute as thus construed, we find that only upon the recording of the certificate can the corporation 'be deemed duly organized' and authorized to 'proceed to business.' In the face of this positive language of the statute we cannot understand how a corporation assuming to be created under it can be legally organized as such, or how it can have any right to transact business, when the certificate of its complete organization has not been filed for record in the recorder's office, as directed. A corporation formed under a general statute has no other powers than those which are granted, either expressly or impliedly, by the provisions of such statute. If its right to be deemed duly organized and its authority to proceed to business are made to depend upon the recording of a certificate of organization, such right and authority are as much limited as though there had been an express prohibition. 'A provision that certain things shall be done to constitute a license or authority is equivalent to an express prohibition against the license or authority unless those things shall be done,' "—citing *Diversey* v. *Smith,* 103 Ill. 378.

The case in which the above language was used was a suit by a creditor against certain persons who assumed to be "directors of a corporation called the Q. W. Lov-

erin Company," for the purpose of establishing a liabil-
ity against them under section 18 of the Corporation act,
based on a failure to file in the recorder's office the cer-
tificate issued by the Secretary of State of the complete
organization of the corporation, as required by section 4
of that act.   Section 18 creates a personal liability, jointly
and severally, against any person pretending to be an offi-
cer, agent or member of the board of directors of any
stock company not complying with the provisions of the
statute; for all debts and liabilities made by them and con-
tracted in the name of such corporation or pretended cor-
poration.   If the case at bar were a suit against the officers
and directors of the water-works company by a creditor
to establish a personal liability under section 18 of the
statute, we would then have the exact situation that existed
in *Loverin* v. *McLaughlin,* except in that case it did not
appear that the certificate had been recorded at any time,
while in the case at bar it was recorded but not within
two years after the date of the license.

In *Edwards* v. *Armour Packing Co.* 190 Ill. 467, the
rule laid down in *Loverin* v. *McLaughlin* was followed
under a very similar state of facts.   In that case certain
officers of a pretended corporation called "Thompson &
Edwards Fertilizer Company" were held personally liable
for the price of one hundred and fifty tons of steam bone-
meal sold by the Armour Packing Company to the pre-
tended corporation.   The personal liability resulted from a
failure of the fertilizer company to file a copy of its char-
ter with the recorder of deeds, as required by section 4
of our statute.   In that case, on page 469, this court said:
"The final certificate and copy of papers, otherwise called
the charter of the company, mentioned in this case, were
issued in 1886 but were never filed in the recorder's office,
and consequently, as we held in the case cited, [*Loverin* v.
*McLaughlin,*] the corporation was never legally organized
or authorized 'to proceed to business.' "

*Diversey* v. *Smith, supra,* and *Gent* v. *Manufacturers' and Merchants' Ins. Co.* 107 Ill. 652, were cases arising under our statute in relation to the incorporation of insurance companies, and it was held in both cases that until the Auditor delivered to such a company a certified copy of the charter and certificate and the same were filed in the office of the clerk of the county where the company is located, as provided by section 8 of the Insurance law, there is no authority whatever for the insurance company to commence business and issue policies, and any attempt on its part to do so before complying with these conditions "is in direct violation of the statute."

A general corporation act which went into effect February 10, 1849, provided by section 1 thereof that any number of persons desiring to form a company for the purpose of carrying on certain enumerated occupations might sign and acknowledge a statement of their intention to form such corporation, in which the name of the company and other particulars in respect to the corporation should be stated, which statement, when acknowledged before some officer having the power to acknowledge deeds, should be filed with the county clerk of the county in which the business of the company was to be carried on and "a duplicate thereof in the office of the Secretary of State," etc. Section 2 provided that "when the certificate shall have been filed as aforesaid" the persons who have signed and acknowledged the same, and their successors, should become a body politic in fact and in name. Several cases came to this court which involved the question in collateral proceedings whether the failure to file a duplicate of the statement with the Secretary of State could be made available as a defense in an action by the corporation against a stockholder or a third person growing out of contract relations between the company and such individual, and in *Cross* v. *Pinckneyville Mill Co.* 17 Ill. 54, it was held that the company could maintain a suit against a subscriber for

an installment due upon his stock notwithstanding the company had not filed the duplicate with the Secretary of State. It was said in that case that the filing of the duplicate with the Secretary of State was a matter of secondary importance and not essential to the existence of a *de facto* corporation. A similar question was presented in *Stone* v. *Great Western Oil Co.* 41 Ill. 85, and the holding in the *Pinckneyville Mill Co. case* was followed. (See, also, *Marsh* v. *Astoria Lodge,* 27 Ill. 421; *Baker* v. *Administrator of Backus,* 32 id. 79.) All of these were cases that only required the corporation to have a *de facto* existence in order to maintain the rights involved. In *Baker* v. *Administrator of Backus* the court pointed out the distinction between a suit by the corporation the maintenance of which only required a *de facto* corporation, and one in which it was necessary that there should be a *de jure* corporation. It was there held that when a company had taken all other steps to be incorporated under the general law of 1849 but had omitted to file the certificate of incorporation in the office of the Secretary of State, such a non-compliance with the statute might sustain a *quo warranto* on behalf of the People and oust the corporators from the exercise of their franchise, but that it did not follow that such corporation would not have a legal existence as to third persons. It was also held that the question whether a corporation had a *de jure* existence could only be determined in a direct proceeding by *scire facias* or by information in the nature of a *quo warranto* in a court of law.

In *Bigelow* v. *Gregory,* 73 Ill. 197, the court had under consideration a statute of the State of Wisconsin, section 17 of which provided that "before any corporation formed and established by virtue of the provisions of law shall commence business, the president and directors shall cause their articles of association to be published, * * * and shall also make a certificate of the purpose, * * * signed by the president and a majority of the directors,

and deposited with the Secretary of State and a duplicate thereof with the town clerk of the town or clerk of the village or city where the business is to be transacted, which is to be recorded in books kept for that purpose." It was held that the publication and filing of the certificate with a clerk, as required by said section, was a condition precedent to the right of the corporation to commence business, and that it had no legal existence until such condition was complied with.

In Thompson on Corporations (2d ed. sec. 178,) it is said: "Where statutes authorize the formation of a corporation in a particular way or with certain formalities, compliance with such requirements is ordinarily regarded as a condition precedent to the *de jure* existence of a corporation. By this is meant that the statutory requirements are conditions precedent to the extent that compliance therewith is necessary in order to create a corporation whose existence will be valid as against an attack in a direct proceeding by the State. A failure to comply substantially with statutory requirements that are deemed conditions precedent will subject the corporation to a judgment of ouster in a direct proceeding by the State for that purpose." The above text is supported by cases cited in the note from California, Colorado, Indiana, Kentucky, Michigan, Missouri and Ohio. In section 179 of the same work illustrations are given of statutory requirements which have been held to be conditions precedent to the legal existence of a corporation. Among other requirements which have been so held is, "that the articles of association shall be filed in certain designated offices, as with the recorder of the county," and this statement is supported by numerous citations in the note.

A private corporation is an organization for the benefit of its members. When brought into being it enjoys certain rights and privileges of great value that are not enjoyed by natural persons. The right to be a corporation is not a

natural or a civil right of any person, and such right can only be acquired from the sovereign State. It is a matter exclusively within the power of the legislature to determine whether it will grant or withhold the privilege of forming corporations. If the legislature determines to exercise its discretion and grant the privilege it may prescribe the terms and conditions upon which the right is to be exercised. In determining what conditions shall be complied with it must be presumed that the legislature would only impose such reasonable conditions as were thought to be necessary to safeguard and protect the interests of the people who might transact business with such corporations. The requirement in section 4 of our statute that the charter of the company shall be recorded in the office of the recorder of deeds of the county within which the corporation has its principal office is manifestly for the purpose of giving publicity to the fact that a corporation has been organized, its name, the purposes for which organized, the amount of the capital stock and whether the same has been paid in cash or in property and what proportion in each, together with the list of the stockholders, with their post-office addresses, and the names and addresses of its officers and directors, so that all persons having occasion to transact business with such corporation may go to the recorder's office and obtain all necessary information. Undoubtedly, the legislature had the right to impose this condition upon corporations and to provide that such corporations should not be fully organized or proceed to business until such condition was complied with, and by way of penalty, to secure a compliance with this requirement, to provide that unless the company "shall be organized and shall proceed to business as provided in this act within two years after the date of such license, then such license shall be deemed revoked, and all proceedings thereunder void." This language does not leave any room for construction. The result of a failure to comply with the statute is a revocation of the license

and the nullification of all subsequent proceedings. The courts have no power to say that a corporation still survives or that it may be resurrected after a sentence of death has been passed upon it by the legislature: We see no escape from the conclusion that the failure to record the certificate of the Secretary of State, and the copies of the papers attached thereto, within two years is fatal to the legal existence of this corporation.

It is insisted that the recording of the certificate after two years and before the commencement of this suit cures this defect. That view cannot be sustained. The failure to record the certificate for two years after the date of the license, *ipso facto*, by virtue of the language of the statute. ended the corporate existence. There was thereafter no license to organize a corporation. That had been revoked by the statute. There were no subsequent proceedings, for they had all become void. In this situation nothing short of a complete re-organization would resuscitate the defunct corporate body. The privilege of being a corporation had passed from the defendants and had to be again acquired from the State. The recording of the certificate some four years after the date of the license had no effect upon the legal status of this corporation.

Appellees rely upon some language found in *Marshall v. Keach,* 227 Ill. 35. That case involved the validity of a contract for the transfer of certain shares of stock in the Marshall Warehouse Company, and it was held that a contract for the sale of stock in a corporation did not amount to a guaranty that the corporation had an existence as a *de jure* corporation, and that the mere fact that the corporation had failed to file a certificate for record with the recorder was not a sufficient excuse to justify a purchaser in refusing to carry out an agreement for the purchase of stock. There is some language found in that opinion from which the inference might be drawn that the failure to file and have recorded the certificate with the

recorder was a mere informality, which did not affect the existence of the corporation. In the course of the discussion in that case it is said: "Under such a state of facts a copy of the certificate could still be filed for record with the recorder of the county and the corporation would then be fully organized *de jure.*" If the above language be understood as authorizing the filing of the certificate after the two years from the date the license had expired it is misleading and should not be understood as the rule in this State. If applied to the period of two years from the date of license the language correctly states the law.

Under the second plea to the information the court is asked to regard this proceeding as an action by the city of Jacksonville, in its private capacity, against appellees, and to consider certain facts set up in said plea as working an estoppel upon said city. We cannot regard this suit in any other light than a prosecution by the People of the State of Illinois for the purpose of ousting a pretended corporation from the exercise of corporate functions and franchises which have been forfeited by a failure to comply with the statute of the State. This proceeding being against the defendants for usurping the franchises of a private corporation, neither lapse of time nor circumstances out of which an estoppel might arise as against an individual can have application. (*People* v. *Pullman Palace Car Co.* 175 Ill. 125; *People* v. *Gary,* 196 id. 310; *People* v. *Shedd,* 241 id. 155; *People* v. *Cowan,* 247 id. 357.) The second plea presented no defense to this action, and the demurrer to it as well as to the first plea should have been sustained.

Appellees contend that the discretion which the court may exercise in granting or refusing leave to file the information continues throughout the proceeding, and that since the court sustained their motion to vacate the order granting leave to file the information and dismiss the same, their position should be viewed the same as if the court had

refused leave, in the first instance, to file the information. Without going into this question of procedure, we are of opinion that there was no time after the presentation of the petition for leave to file the information, under the facts shown, that the court could have refused leave without an abuse of the discretion vested in the court. The discretion which the court must exercise in matters of this kind is not an arbitrary personal discretion of the judge but a sound legal discretion according to law, the exercise of which may be reviewed. (32 Cyc. 1434, and cases there cited.) The principal fact which it is claimed the court did not know at the time leave was granted to file the information is, that the certificate was filed for record before the commencement of this suit but after the expiration of two years. This fact, as we have sought to show, was wholly immaterial and could not properly have had any influence upon the court in determining whether to allow the information to be filed. There is a clear intimation in *People* v. *Golden Rule,* 114 Ill. 34, to the effect that after the court has granted leave to file an information in *quo warranto* the discretion is exhausted and thereafter the cause should proceed as in other actions at law. But aside from this question, and regardless of whether the discretion is exhausted after leave granted or whether it contiues until the final order, we are of the opinion that it would have been error to refuse leave to file the information in this case notwithstanding all the facts brought to the knowledge of the court during the hearing.

The judgment of the circuit court of Morgan county is reversed and the cause remanded, with directions to sustain the demurrer to the pleas and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*