**In re NATIONAL MILLS, Inc.**
**VanAUSDALL et al. v. McCANON.**
No. 8147.

Circuit Court of Appeals, Seventh Circuit.
Feb. 13, 1943.

Samuel E. Hirsch, Julian H. Levi, and Wm. Ruger, all of Chicago, Ill., and Chester A. Groves, of Quincy, Ill., (Wilhartz & Hirsch, of Chicago, Ill., of counsel), for appellants.

Carl G. Schmiedeskamp, of Quincy, Ill., for appellee.

Before MAJOR, and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree of the District Court, entered July 6, 1942, holding invalid a chattel mortgage, executed March 10, 1938, to secure a certain promissory note in the principal amount of $10,000.00, wherein National Mills, Inc., a corporation (subsequently the Bankrupt) was the mortgagor and First United Finance Corporation (hereinafter referred to as the Finance Corporation) was the mortgagee. On November 5, 1938, the mortgage and note secured thereby were for a consideration of $8,162.00, assigned to appellants (hereinafter referred to as Claimants). At that time, National Mills was involved in a corporate reorganization proceeding, in which a final order of bankruptcy adjudication was entered February 18, 1939. The Trustee, by order of court, sold the property covered by the chattel mortgage free and clear of lien, and Claimants sought to have the proceeds thereof impressed with a lien.

The issue thus presented was referred to a Referee who made finding of facts and concluded that Claimants were not entitled to the relief sought for two reasons, (1) that the mortgage was invalid because of improper recordation, and (2) invalid because unconscionable and therefore unenforceable under equitable principles. The court agreed with the Referee as to (1) but disagreed as to (2).

The first issue as to the validity of the mortgage is dependent solely upon the question as to whether it was recorded in the proper county. The solution must be found in the Business Corporation Act of Illinois, enacted in 1933, Smith-Hurd Ill. Ann.Stat. Chap. 32, § 157.1 et seq. The question has not been decided by an Illinois court, neither do we have the benefit of the legislative history of the Act.

At the inception, it is pertinent to observe that Sec. 4 of the Illinois Chattel Mortgage Act, Smith-Hurd Ill.Ann.Stat. Chap. 95, § 4, provides in part that a mortgage of personal property shall not be valid as against the creditors or the mortgagor "unless it shall be deposited for filing or recording in the office of the recorder of deeds of the proper county within ten days of its execution * * *. Such mortgage * * * shall be received for filing or recording by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded." There is also a dearth of Illinois authorities as to what constitutes the residence of a corporation within the meaning of this Section, but it was held in

Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841, as being the place designated as its principal place of business in its Articles of Incorporation. While the court was construing a former Corporation Act of Illinois, there appears no reason why the Chattel Mortgage Act in this respect should be construed differently since the enactment of the present Corporation Act. Furthermore, the parties make no issue but that the residence of a corporation, within the meaning of the Chattel Mortgage Act, is the place so designated by the corporation. For the purpose of the instant case, we shall so assume.

Prior to a consideration of the Mortgage Act, it is important to note the dates on which certain acts took place. On August 28, 1935, a charter was issued to National Mills, Inc., upon Articles of Incorporation filed by it with the Secretary of State. Such Articles provided that the initial registered office was at 111 South Front Street in the city of Quincy, with its registered agent at that address. This certificate of incorporation was recorded in the Recorder's office at Quincy, Illinois (Adams County). On February 21, 1938, the officers of National Mills executed a certificate of change of registered office, by which it was sought to change its registered office from Quincy, Illinois to 120 South LaSalle Street, Chicago, Illinois. On February 28, 1938, such certificate was presented to the Illinois Secretary of State, marked "Filed" by that official, and a duplicate original returned to the Corporation. As heretofore stated, the chattel mortgage in dispute was executed March 10, 1938, and on the following day filed for record in the Recorder's office of Adams County. The certificate of change of registered office and agent was filed by the Corporation in the Recorder's office in Cook County, Illinois, March 21, 1938, together with a certified copy of the Articles of Incorporation. A copy of the certificate of change of registered office was filed in the Recorder's office of Adams County, Illinois, March 24, 1938.

From the dates thus disclosed, it is shown that the chattel mortgage was executed and recorded in Adams County subsequent to the change of the Corporation's registered office but prior to the time that the certificate of such change was filed, either in Quincy or Chicago. The precise question for decision is whether the change of registered office, insofar as it affects the mortgagee, took place at the time it was authorized by the Secretary of State, or at the time the certificate of such change was filed for record in the Recorder's office at Quincy.

Although we think it is necessary to consider the Act in its entirety in order to ascertain the legislative intent and purpose, the provisions directly involved are Sections 11 and 12. The former, entitled "Registered office and registered agent," provides:

"Each corporation shall have and continuously maintain in this State:

"(a) A registered office which may be, but need not be, the same as its place of business.

"(b) A registered agent, which agent may be either an individual, resident in this State, whose business office is identical with such registered office, or a corporation authorized to transact business in this State having a business office identical with such registered office.

"The address, including street and number, if any, of the initial registered office, and the name of the initial registered agent of each corporation organized under this Act shall be stated in its articles of incorporation."

Section 12, entitled "Change of registered office or registered agent," provides that when a corporation changes its registered office from one county to another, it shall first file a statement of the change with the Secretary of State in duplicate, and the Secretary of State, if he finds that such statement conforms to the provisions of the Act, shall:

"(a) Endorse on each of such duplicate originals the word 'Filed;' and the month, day, and year of the filing thereof.

"(b) File one of such duplicate originals in his office.

"(c) Return the other duplicate original to the corporation or its representative."

It then provides:

"The duplicate original returned by the Secretary of State shall be filed for record within the time prescribed by this Act in the office of the recorder of deeds of the county in which the registered office of the corporation in this State was situated prior to the filing of such statement in the office of the Secretary of State.

"If the registered office is changed from one county to another county, then the

corporation shall also file for record within the time prescribed by this Act in the office of the recorder of deeds of the county to which such registered office is changed:

"(a) A copy of its articles of incorporation certified by the Secretary of State.

"(b) A copy of the statement of change of address of its registered office, certified by the Secretary of State."

The section concludes: *"The change of address of the registered office, or the change of registered agent, or both, as the case may be, shall become effective upon the filing of such statement by the Secretary of State."*

Section 144, entitled "Recording of documents," provides: "Any document required by this Act to be filed for record in the office of the recorder of deeds shall be so filed within fifteen days after the mailing thereof by the Secretary of State to the person or corporation charged with the duty of filing the same, unless such document can not with reasonable diligence be filed within such time, in which case it shall be filed as soon thereafter as may be reasonably possible."

Section 100, entitled "Penalties imposed upon corporations," provides, among other things: "Each corporation that fails or refuses (1) to file in the office of the recorder of deeds within the time prescribed by this Act any document required by this Act to be so filed, or (2) to maintain a registered office or a registered agent in this State, in accordance with the provisions of this Act, * * * shall be deemed to be guilty of a misdemeanor and upon conviction thereof may be fined in any amount not exceeding five hundred dollars."

The Trustee places much reliance upon the provision of § 12 (heretofore quoted in italics), in support of the construction urged by him that the change of registered office was complete when the statement thereof was filed by the Secretary of State. This construction, so it is urged, is strongly supported by paragraph (n) of § 2 of the Act, entitled "Definitions," which provides: " 'Registered office' means that office maintained by the corporation in this State, the address of which is on file in the office of the Secretary of State."

Consistent with such construction, it is contended that the recording provision of § 12 (heretofore quoted) is not mandatory, but merely directory.

It appears reasonably certain that if the recording provision is mandatory, a change of the corporate residence was not complete until the Secretary's certificate was filed for record at Quincy. On the other hand, if the provision is merely directory, it would seem that recording was not essential to complete the change of the registered office. The District Court sustained the Trustee's contention in this respect. We are convinced that this is an erroneous construction, contrary to the legislative intent and purpose.

From the sections above quoted, we find such imperative language as "shall be filed for record," "any document required by this Act to be filed for record * * * shall be so filed," and "each corporation that fails or refuses (1) to file in the office of the recorder of deeds within the time prescribed * * * any document required * * * to be so filed * * * shall be deemed to be guilty of a misdemeanor." The commanding words thus employed leave little, if any, room for doubt as to their mandatory character. We cite, without stopping to analyze, a few of the Illinois authorities which have distinguished between mandatory and directory provisions of a statute.[1] From these cases, we think it may be safely stated that a provision in a statute designed for the protection of the public or third parties is usually construed as mandatory.

Our view is strengthened, so we think, by the numerous sections of the Act requiring recordation, in the identical language as that contained in § 12. It is found in § 15, entitled "Issuance of shares of preferred or special classes in series," § 48, entitled "Filing of articles of incorporation," § 56, entitled "Filing of articles of amendment," § 58, entitled "Redemption and cancellation of shares," § 58a, entitled "Cancellation of shares," § 59, entitled "Reduction of stated capital in certain cases," § 68, entitled "Recording of certificate and articles of merger or consolidation," and § 77, entitled "Filing of statement of intent to dissolve." In 1935, the Act was amended by the insertion of § 79c, entitled "Filing of statement of revocation of voluntary dissolution proceedings,"

---

[1] People v. Elgin Home Pro. Ass'n, 359 Ill. 379, 384, 194 N.E. 584; Foutch v. Zempel, 332 Ill. 192, 199, 163 N.E. 546; Binder v. Langhorst, 234 Ill. 583, 587, 85 N.E. 400; People ex rel. Crowe v. Marshall, 262 Ill.App. 128, 131.

which again included the exact recordation provision.

It will be noted that in all of these provisions, as in § 12 (here involved), the responsibility for recording is placed upon the corporation. It is also pertinent to note that § 74, providing for dissolution by a corporation which has not commenced business, and § 81, providing for dissolution subsequent to the commencement of business, contain the same requirement as to recording, but the responsibility is placed upon the Secretary of State. In addition, § 92 contains the same requirement as to recording upon involuntary dissolution by a court of equity, but the responsibility for recording is placed upon the clerk of the court. Thus it will be observed that responsibility for recording is placed upon the corporation in all instances where its legal entity is retained, upon the Secretary of State in those instances where the corporate existence is terminated by proceedings in his office, and upon the clerk of the court where existence is terminated as the result of a court proceeding.

We cannot impute to the legislature which made such numerous and meticulous requirements as to recording with the fixation of responsibility therefor, as having no definite purpose in mind. Yet, that would be the inevitable result of construing the recordation requirement as to a change of corporate residence, as the Trustee would have us do. The information which a third person might obtain from the records of the Recorder's office would be useless unless it could be relied upon. The Act requires a corporation to initially fix its place of residence in its Articles of Incorporation and to record the same in the county so fixed. It likewise requires that when a change of such residence is made that the certificate thereof be filed, not only in the county where its residence had been previously fixed but also in the county to which it is to be changed. We can think of no purpose which the legislature intended by this requirement other than that persons having business with a corporation might ascertain from the Recorder's office its place of residence.

The Supreme Court of Illinois in People v. Mackey, 255 Ill. 144, 157, 99 N.E. 370, 374, discussed the purpose of a recording provision contained in a previous Corporation Act which appears pertinent in the instant situation. The Court said:

"In determining what conditions shall be complied with, it must be presumed that the Legislature would only impose such reasonable conditions as were thought to be necessary to safeguard and protect the interests of the people who might transact business with such corporations. The requirement in section 4 of our statute that the charter of the company shall be recorded in the office of the recorder of deeds of the county within which the corporation has its principal office is manifestly for the purpose of giving publicity to the fact that a corporation has been organized, * * * so that all persons having occasion to transact business with such corporation may go to the recorder's office and obtain all necessary information."

Furthermore, from a practical, common-sense conception, it does not appear likely that the legislature intended that persons from all parts of Illinois in dealing with corporations should be required to ascertain the place of corporate residence from the office of the Secretary of State located at Springfield. If so, it seems reasonable to think that some provision would have been made for their accommodation and guidance. This the legislature did not do. The Act does not require the Secretary of State to maintain either an abstract or index of documents for public reference and examination with respect to corporations. Information necessarily would have to be obtained by telephone, letter or personally from the office of the Secretary of State, perhaps from one employee today and another tomorrow. Such a system would result not only in inconvenience, but business with a corporation could be transacted only at great risk. Furthermore, the information obtained from the Secretary of State's office might prove worthless by the time a mortgage was executed and recorded in the county of corporate residence in accordance with such information. This is so for the reason that such residence would be subject to change merely by placing the Secretary's file mark upon an application therefor.

In marked contrast to a construction calculated to produce such an impractical result is the one by which the corporation is required to record in the proper county any change of its residence so that persons dealing therewith may obtain and rely upon the information thus disclosed. § 20, Chap. 115, of the Illinois

Recorder's Act (Smith-Hurd Ill.Ann. Statutes) provides for the keeping of records, indices, abstracts, and books by the Recorder, to which all persons shall have free access, with the privilege of inspection and examination. The Trustee points out numerous difficulties, some not without merit, which will present themselves by such a construction. We shall not, however, undertake to cross any bridges which are not immediately before us. We are satisfied that the construction sought by the Trustee is not tenable. As was said in Loverin v. McLaughlin, 161 Ill. 417, 429, 44 N.E. 99, 103: "Statutes should be so construed as to give them a reasonable meaning, and should not be so interpreted as to lead to absurd consequences."

■ Under our view, it is not necessary to determine whether the mortgagee had actual knowledge' of the change of the mortgagor's corporate residence, prior to the execution of the chattel mortgage, as found by the District Court. At most, such knowledge could only have pertained to the proceedings had in the office of the Secretary of State. Inasmuch as such change became effective as to third parties, including the mortgagee, only when the certificate thereof was filed in the Recorder's office at Quincy, the mortgagee had a right to rely upon such record. As to it, the change of residence took place at the time of such recording and not before.

■ So far, we have not discussed the provision of § 12 (heretofore quoted in italics) that the change of residence "shall become effective upon the filing of such statement by the Secretary of State," and § 2(n) (heretofore quoted) defining the corporate residence. Admittedly, they cannot be ignored and must, if possible, be given effect, the same as all other provisions of the Act. Also admittedly, the literal language of these provisions appears inconsistent with the construction which we have placed upon the recordation requirement. A study of the Act, however, leads us to the belief that this apparent inconsistency is not real. In our view, the change of residence was made effective upon filing by the Secretary of State, only insofar as it pertained to the state, the corporation, its officials and stockholders. This view is consistent with our holding that it did not become effective as to creditors or third persons until the recording requirement had been complied with. In this connection, it is pertinent to observe the relationship created by corporate charter. In Kreicker v. Naylor Pipe Co., 374 Ill. 364, 371, 29 N.E.2d 502, 506, the Court said: "It is established law that a corporate charter is a contract of a threefold nature. It forms the basis for a contract between the State and the corporation, the corporation and its stockholders, and the stockholders inter sese."

■ So, by the statute under consideration, the legislature might well have intended that as to the corporation the effective date of the change of residence was to be dependent upon the happening of one event, while as to the public the effective date was to be dependent only upon the happening of a further event. Such view finds support in Re Greer College and Airways, 53 F.2d 585, 586 (an opinion of this Court). True, this case, as the District Court pointed out, is distinguishable on the facts and on the ground that the court was construing a provision of the 1919 Corporation Act. However, the court had before it a provision concerning an amendment of the Articles of Incorporation by a change of corporate name, which provided, "The amendment shall be effective from the date of filing by the Secretary of State." The Corporation, after such amendment was filed by the Secretary of State but prior to the filing of a copy thereof in the Recorder's office, executed a chattel mortgage by its old corporate name. The Court on page 586 of 53 F.2d said: "Until such certificate was filed [in the Recorder's office], a creditor taking a mortgage from the corporation to secure a loan presently advanced has a right to assume that the corporate name has not been changed." Thus, it was held that the change of corporate name which the statute made effective from the date of filing by the Secretary of State was not effective as to a person making a loan to the corporation until the certificate of such change had been filed in the Recorder's office. We construed the word "effective" as having application "to the authority of the corporation." Applying the same reasoning to the instant situation, the words "shall become effective" relate to the Corporation and its status with the State. The Corporation was thus bound by such change of residence, but third persons, including the mortgagee, were not bound until the certificate of change was filed in the Recorder's office at Quincy.

The District Court rejected the Trustee's contention that the mortgage was invalid because unconscionable and therefore unenforceable in equity, largely upon the authority of Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L. Ed. 982. The Trustee seeks to distinguish this case on the theory that an assignment being equitable in nature, the Claimants as assignees are seeking the vindication of purely equitable rights. Upon this premise, it is argued that because of the harshness of the mortgage terms, the Claimants should be denied relief in a court of equity.

There is no dispute but that the officials of National Mills were entirely familiar with the terms and provisions of the mortgage contract. Likewise, it is undisputed that the note and mortgage were on November 5, 1938 assigned to Claimants for an adequate consideration. In fact, it is shown that the consideration paid was $8,162.00, which was the amount then due and owing by the terms of the assigned instruments. Claimants were enjoined by the bankruptcy court from proceeding on the note and mortgage in any other court. Over Claimants' protest, the Trustee was directed to sell the mortgaged property free and clear of lien. Claimants in the instant action seek to have the funds realized therefrom impressed with a lien. If the instant proceeding had been instituted by the original mortgagee (assignor) we think there could be no question but that the McKey case is directly in point and would be controlling. The court on page 448 of 294 U.S., on page 447 of 55 S.Ct., 79 L.Ed. 982, said:

"The mere fact that a party is obliged to go into a federal court of equity to enforce an essentially legal right arising upon a contract valid and unassailable under controlling state law does not authorize that court to modify or ignore the terms of the legal obligation upon the claim, or because the court thinks, that these terms are harsh or oppressive or unreasonable. A party may stand upon the terms of a valid contract in a court of equity as he may in a court of law."

Furthermore, we are of the view that Claimants as assignees acquired rights no different, certainly no less, than those possessed by the assignor. Barbour v. White, 37 Ill. 164, 167; Robinson v. Huschle, 233 Ill.App. 519, 521; Shropshire, Woodliff & Co. v. Bush, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436. The Trustee cites King v. Harpster, 306 Ill. 202, 137 N.E. 823, and Starck v. Goodman, 288 Ill.App. 347, 6 N.E.2d 503, which hold in effect that an assignee of a mortgage takes it subject to all equities existing in favor of the mortgagor. In other words, any defense available to the mortgagor against the mortgagee is also available against the latter's assignee. This rule, however, is not applicable to the instant situation for the reason that under the authority of McKey the defense now sought to be invoked against Claimants (assignees) was not available against the original mortgagee (assignor). We think the District Court properly held: "The Court is of the opinion that when claimants litigate their question in a bankruptcy court they are entitled to the same legal rules, (be they legal or equitable) that would apply in courts other than bankruptcy."

The order of the District Court is reversed, with directions that Claimants be paid from the segregated funds in the possession of the Court the amount due upon the note and mortgage in suit.