**MAY v. MOSS.**
No. 14963.

United States Court of Appeals,
Eighth Circuit.
April 27, 1954.

Harry E. Meek, Little Rock, Ark. (A. F. House, Little Rock, Ark., on the brief), for appellant.

D. D. Panich, Little Rock, Ark., for appellee.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The action stated in the complaint in this case was a plenary action in equity brought by the trustee in bankruptcy to recover certain timber lands in Arkansas that had been transferred by the bankrupts by special warranty deed before bankruptcy to one Mosser, named defendant. The case came on for hearing and it appeared that Mosser was not the owner but had only a lien upon the lands, and also that he had entered into a sales contract with W. D. May which obligated Mosser to sell and May to buy the lands for $125,000 of which May had paid $5,000 earnest money. The three parties agreed to a compromise and the court entered a consent decree on May 23, 1950, which vested the title to the lands in the trustee, subject to a lien in favor of Mosser in the sum of $71,250,

and permitted May to intervene as a petitioner for specific performance of the sale contract. The decree ordered him to pay the remaining $120,000 of the purchase price of the lands within thirty days of the decree and provided for a transfer of them to him upon his making the payment. It also directed the satisfaction of Mosser's lien out of the money to be paid by May.

But May did not have the money to carry out his obligation to purchase as ordered in the decree, and the parties were again before the court on July 3, 1950, when a new compromise agreement was reached and a new consent decree was entered by the court by which May's purchase price for the lands was raised from $125,000 to $145,000.

In recognition of the fact that May did not have the money to buy the lands and pay off the lien as he had agreed and was ordered to do in the decree of May 23d, the agreement and consent decree of July 3d accorded him the right to go upon and take timber from the lands, but ordered him to make payments of not less than $21,666.66 monthly, first to the owner of the lien until it was discharged, and then to the trustee as owner of the title. The decree provided for transfer of the lands to May upon his fulfillment of the prescribed obligations.

On December 28, 1950, the parties were again before the court and it clearly appeared, as found by the court, that "On October 23, 1950, a payment of $21,666.66 became due under the terms of the order and agreement of July 3d, 1950. This payment was not made."

May made no claim that he had complied with the July 3d consent decree, but appealed to the judge, saying: " * * * I wish it would be possible for the Judge to let me have two or three days to close this deal here * * * Judge, Your Honor * * * the possibilities are I will be called back into active duty within in the near future * * * it doesn't look like three or four days to close out a deal and get their money will jeopardize anyone in any way." The court

acceded to the appeal forthwith without further discussion and directed that an order be prepared reserving "four days to pay the complete matter off." Counsel for the trustee answered, "If the court says so there is nothing else I can do."

An order was accordingly entered on December 30, 1950, which modified the order of July 3d, 1950, and gave May four days from December 28, 1950, to pay to the trustee in cash the balance of his purchase price in the sum of $102,697.33, together with "interest as may be due."

May succeeded in borrowing the amount and deposited it in the form of a certified check with the clerk of the court within the four day period, and immediately thereafter, on January 2, 1951, May filed his petition praying that the trustee be ordered to convey the property to him and to free it of the lien.

Three days later, on January 5, 1951, the trustee filed response to that petition praying that it be denied and on the same date filed a motion to modify the order entered on December 28, 1950, extending May's time for payment. The trustee charged that on that day May had been in default of performance of the conditions upon which he had been accorded the right to acquire the lands by the consent decree of July 3d, 1950, and that the court did not have jurisdiction on December 28, 1950, to make changes, extensions or other alterations in the consent decree. It was also alleged that the trustee had received an offer of $190,000.00 for the lands from another party.

On March 7, 1951, the court entered its decree to the effect that the court had been without jurisdiction to adjudicate or to enforce in this action the rights of the parties which arose out of the sale contract. It was of opinion that the jurisdiction was in bankruptcy. The decree dismissed May's intervention and vacated the several orders by which May had been awarded enforcement. It also dismissed May's petition of January 2, 1951, which prayed for the transfer of the lands to him and the parties consenting, it directed that his certified check, which he had delivered to the clerk and which had never been cashed, and all of the moneys he had paid on his purchase price be returned to him. They were returned to him and he accepted them. Apparently on April 26, 1951. But before taking the money back May filed notice of appeal and moved for leave to accept his money "without prejudice to his right to appeal." That motion was granted.

On the appeal taken by May pursuant to his Notice of Appeal, filed April 3, 1951, this court reviewed the decree of March 7, 1951, in May v. Moss, 194 F.2d 133, and held that the trial court had not been without jurisdiction to permit the intervention of May. It declared that "Having jurisdiction of the action the court had power to enter the consent decree of May 23, 1950, vesting title to the lands in controversy in the trustee subject to a lien in favor of Mosser and to Mosser's obligation to convey the property to May." The decree of March 7, 1951, was accordingly reversed and the case was remanded for further proceedings in accordance with this court's opinion. 194 F.2d at page 137.

After the mandate of this court was docketed in the District Court on May 26, 1952, May did not renew his tender of purchase price but the parties brought the case before the court and after hearing a final order was entered on September 1, 1953, which modified the order of December 28, 1950, by eliminating the four day extension of time granted therein and directing a public sale of the lands and dismissed May's intervention for want of equity, at his costs.

May prosecutes this appeal from that final order to reverse (1) the dismissal of his intervention; (2) the modification of that part of the order of December 28, 1950, granting the four day extension, and (3) the assessment of costs against him.

The record does not identify the particular pleadings upon which the hear-

ings were had which resulted in the final order now appealed from, but appellant asserts that the trial was on the merits upon the trustee's motion to modify the order of December 28, 1950, by eliminating therefrom May's four day extension and on May's response to that motion.

Those pleadings do not reflect the condition of the lands at the time of the hearings and order now appealed from. The record indicates, however, that the lands had been sold at public auction pursuant to an order of the referee in bankruptcy on April 12, 1951; that James H. Cross became the purchaser at the price of $200,000, and that he had entered into possession and removed the timber so as to reduce the value far below May's purchase price.

The appellant contends for reversal that the trial court erred in modifying its order of December 28, 1950, by eliminating the four day extension. He argues to the effect that, (1) the court erred in its application of the rule that a consent decree cannot be modified except by consent; that (2) the court abused its discretion in denying the four day extension because May had materially altered his position in reliance thereon; (3) the trustee in bankruptcy was estopped to challenge May's rights as a purchaser.

1. The rule as to modification of the consent decree.

The opinion and judgment here appealed from reflect that subsequent to appeal the trial court took meticulous pains to conform its proceedings to the opinion of this court. At the outset of its opinion accompanying the judgment now before us the court recalled that the pronouncements of this court "are now the law of this case" and it quoted those which established the jurisdiction in respect to May's intervention and the validity of the consent decree of May 23, 1950. It then quoted from our opinion, 194 F.2d at page 137:

"A consent judgment has the same force and effect as any other judg-ment until set aside in the manner provided by law. Woods Bros. Const. Co. v. Yankton County, S.D., 8 Cir., 54 F.2d 304, 308, 81 A.L.R. 300. Except as provided by law it cannot be modified in any essential part without the consent of the parties. City of Des Moines v. Des Moines Water Co., D.C.S.D.Iowa, 218 F. 939, 943",

and stated:

"In the case of Des Moines cited by the court, Judge Van Valkenburgh, then District Judge, said:

" 'But there is another equally serious objection to this application. This order, and everything in it, was entered by consent. In such cases, in the absence of fraud or mistake, it cannot be modified or varied in any essential part without the consent of the parties to the same. Leitch v. Cumpston, 4 Paige [N.Y.], 476; Mains v. Des Moines National Bank, 113 Iowa 395, 85 N.W. 758. While the court upon the application of either party, may give such further directions as shall become necessary for the purpose of carrying such order or decree into effect according to its spirit and intent, the variation of such an essential element as the time of payment would not fall within such a legitimate exercise of discretion, but would amount to a material alteration of the unambiguous terms of the agreement.'

"The learned Judge Van Valkenburgh, then quoted with approval from Horning v. Kendrick, 161 Mich. 413, 126 N.W. 650, where the Supreme Court of Michigan said:

" 'A decree by consent cannot, in the absence of fraud or mistake, be set aside by rehearing, or on appeal; nor can it be modified without the consent of the parties. Where a decree by consent was entered, under which complainant was to pay a certain sum to defendant on or before a certain date, whereupon defendant was to convey certain prop-

erty in dispute to the complainant, a supplemental decree entered, extending the time of payment 60 days, was an alteration of the decree; the element of time being the very essence of the agreement, which ripened into a decree. * * * If the court below could extend the time once for a month, it could again extend it for a further period, and thus render a decree less valuable, or even useless, to the party not consenting to the change. A reduction of the sum to be paid might easily be less injurious to the rights of the relator than an extension of the time for payment.' "

Recognizing fully that it had jurisdiction over May's intervention and power of enforcement in respect to his sale contract as modified and defined by the consent decree of July 3d, the court noted the provisions of that decree as follows:

"Ordered that the Trustee W. E. Moss be and he is authorized to enter into a contract with the said intervener W. D. May, said contract to embrace all of the provisions as hereinabove set forth * * * There is attached to this order of July 3, 1950, an agreement between W. E. Moss, Trustee and the Intervener W. D. May in which W. D. May acknowledges that he had executed the contract in conformity with the order of the court aforesaid (July 3, 1950) and for the uses, purposes and considerations therein set forth."

The court then observed:

"As a part of the consideration for the entry of the order of July 3, 1950, and the execution of the agreement of that date, the Intervener, W. D. May, entered into the following solemn obligation (in both the decree and agreement):

" '3. It is further expressly agreed between the parties hereto that the said Buyer (Intervener) will not in any manner for any reason seek nor ask for additional time in which to perform under the terms of this agreement and said order aforesaid, and that upon the failure of the said Buyer to perform, under the terms of said order and agreement, within the time stated and without any extension thereof, said failure shall operate as a full and complete forfeiture and the trustee shall be immediately restored to full possession and control of said lands and timber involved herein, and upon the happening of any such forfeiture, the Buyer shall immediately cease all operations of every kind and character upon said lands and shall not thereafter cut or remove any timber therefrom whether said timber shall then be cut or standing.'

"This order was presented in open court with the Intervener and his counsel present. After reading the order and having been advised that an agreement in keeping with the order had been prepared and would be signed, the court found the terms of the order so harsh that the court directed it be read aloud in open court. After this reading the Intervener was told by the court that before he consented to the entry of that order he should consider, and unless he was prepared to make these payments he was putting himself in a position to lose all moneys he had paid and putting himself beyond the power of the court to help him, if he defaulted in payments. The Intervener personally and by counsel consented in open court to the entry of the order of July 3, 1950.

"The court cannot make contracts for the parties, nor relieve them of the burdens of the contract, if the contract proves improvident, or one of the parties finds it convenient to repudiate his obligations under the contract. Nor can the court give relief to a party, who enters into a consent decree when that consent is knowingly and intelligently made,

when there is not even a suggestion of fraud, misrepresentation or mistake.

"On October 23, 1950, a payment of $21,666.66 became due under the terms of the order and agreement. This payment was not made. Mr. W. R. Alsobrook, to whom the payment was due to be made, testified that this payment was not made. Intervener does not contend that it was. There were other terms upon which Intervener also defaulted.

"Yet despite his solemn obligation not to ask further time for compliance, the Intervener was before the court on December 28, 1950, asking further time. On that day the court orally granted four days from that date for the Intervener to make payment. That order was actually presented to the court for signature on December 29, 1950, ordered entered nunc pro tunc as of December 28, 1950, and was entered as of record as of December 30, 1950. Thus it is clear that on October 23, 1950, the Intervener was in default. The order of December 28, 1950, did not extend the time for payment four days only but actually extended the time from October 23, 1950" [over two months].

The court then made its declaration:

"This court is bound by the consent decrees and the findings of the Court of Appeals. The extension of time for the Intervener to make payment from October 23, 1950 [to January 1, 1951], was a material modification of the order of July 3, 1950, was done without the consent of the Trustee, was beyond the power of the court and void. Horning v. Kendrick, supra; Walling v. Miller, 8 Cir., 138 F.2d 629; Backus v. United States, 59 F.2d 242, 75 Ct.Cl. 69; Manufacturers' Finance Co. v. McKey, Trustee, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982."

We think these conclusions were in accord with the evidence, in accord with the opinion of this court and the authorities cited, and were not erroneous.

2. As to abuse of discretion.

This court recognized in its opinion that in the plenary action which was involved the court had the discretionary powers that are incident to the exercise of the equity jurisdiction but there is no intimation that such powers extended to changing the essential terms of the consent decrees. We think there was no abuse of discretion involved in the elimination of the so-called four day extension from the Order of December 28, 1950.

3. As to estoppel on the part of the trustee.

■ It is contended that the trustee in bankruptcy made representations that induced the loaning of the money to May enabling him to make the tenders during the four day extension and also that the trustee accepted the tenders under such circumstances as to work an estoppel against him.

It appears that May did not arrange a meeting with the trustee and his attorney and make his tender of the purchase price to the trustee in an ordinary way but a certified check for $102,679.33 was delivered to the clerk of the court who had a telephone conversation with the Judge concerning it, and two additional checks for small amounts were delivered and there is conflicting testimony as to just what was said and done in the matter of the tenders.

The trial court found that:

"The plaintiff received into his possession the check for $102,679.33 which was delivered to the clerk of the court by the intervener and in turn mailed to the trustee by the clerk under the impression plaintiff was accepting said check by order of this court. * * * the plaintiff did not accept these payments with any intention of being bound thereby or of delivering a deed to the intervener. The trustee did not endorse the check nor deposit it to his account and immediately upon con-

sultation with his attorney he tendered the checks back into court for return to the intervener. He acted with due diligence. He made no statement that he would accept the money and deliver a deed and the intervener and representatives of those lending him the money well knew that the trustee was resisting and objecting to the sale of the lands to May after his breach on October 23, 1950, of the consent decree and contract. The intervener was not misled to his injury nor has his position in any manner been changed to his disadvantage because of anything said or done by the trustee."

The trial judge was especially qualified to appraise the conflicting testimony on which the foregoing findings were based and our study of it has not persuaded that any part of the findings was clearly erroneous. The trustee's motion of January 5th to amend the Order of December 28, 1950, was timely filed and the trustee was not estopped to request the relief sought.

It is true that on occasions between the time of his intervention on May 23, 1950, and March 7, 1951, May had deposited considerable sums of money in connection with his attempt to purchase the lands. At the time the raise of the price from $125,000 to $145,000 was ordered by consent decree, he delivered $10,000 to the trustee and he delivered two monthly installments of $21,666.66 to apply on the Mosser lien. He also testified that he had paid $1,250 "cash of his own money" on that lien. But his neglect to comply with the court order which he had himself invoked and to which he had consented left the bankruptcy creditors who were the real beneficial owners of the equity in the lands out of their money until the bankruptcy sale of April 12, 1951. Until then their lands remained subject to the lien May had agreed to pay off and nothing could be paid them on their claims. May petitioned for and took back all of his money

on April 26, 1951, and the finding of the trial court that the intervener has "received equitable treatment by the trustee and by the court" is not erroneous.

Having nothing invested in the lands after April 26, 1951, May had no interest or estate therein that required or justified equity foreclosure against him. Any right on his part to specific performance was dependent entirely on his being able to show that he had strictly and completely complied with the final consent decree—which he had not done. "Performance of a judgment or decree of specific performance must comply with the terms and conditions thereof. Thus, the decree must be complied with * * * as to the time and manner of payment of the purchase money." 81 C.J.S., Specific Performance, § 169, p. 802.

As to May's default.

A considerable portion of appellant's brief is directed to the contention that on December 28, 1950, when May asked for and the court accorded him the four day extension in controversy May was not "strictly speaking" in default of his obligations under the July 3d consent decree. It is argued that he was not required by that decree to make monthly payments of $21,666.66, two of which he had made and the rest of which he had been unable to and had failed to make, but we think the contention is without merit. The trial court found that "the consent decree of July 3, 1950, provides that the intervener was to pay the lienor $71,250, with interest thereon, at the rate of not less than $21,666.66 per month within a period of three and one-half (3½) months from the date of the decree". And that, "The default of the intervener of the payment due on October 23, 1950, breached the terms of the Consent Decree and Contract for it was upon that date the three and one half (3½) month period allowed the intervener in which to pay the first lien expired". We think these findings were in accord with the evidence.

■ It is observed that the trial court did not rest the decree here appealed from in any part upon the fact that the lands in question had been sold on April 12, 1951, at the public auction ordered by the bankruptcy court. The intervener instead of renewing a tender of purchase price filed without leave a Motion to Amend Intervention by alleging that the purchaser at the bankruptcy sale had removed the timber and virtually stripped the land of value and prayed taking of evidence and an accounting of damages. In view of its holding that the intervener was not entitled to specific performance by reason of his breaches of and failure to comply with the requirements of the July 3d consent decree the court ordered the motion to amend intervention to be stricken and we find no error in that ruling.

As to the costs.

The arguments have covered a wide range in this case and have all been considered but the substantial issue is very narrow. The record is clear that the grant of the extension of time on December 28, 1950, was made without deliberation and on the spur of the moment, responding to an appeal personally made by May, and that the trustee acted with diligence to have the court amend the order. That the court did set it aside on March 7, 1951, and ordered the return of the monies advanced so that no substantial loss was suffered by May. His inability to perform occasioned delay. We discern no error in the general assessment of costs against him though he may have the right to move to retax after the fee bill is rendered. The costs of this appeal are taxable to him.

We have considered the appellant's point that the bankruptcy creditors might be satisfied in full if the court should accept May's bid of $145,000 and reject the $200,000 payment by the purchaser at the public sale. We do not deem it meritorious.

Finding no error in the judgment appealed from, it is

Affirmed.