In re TRIANGLE EQUIPMENT
COMPANY, INC., Debtor.

George I. VOGEL, II, Trustee, Plaintiff,

v.

TRIANGLE EQUIPMENT COMPANY,
et al., Defendants.

The BANK OF CHRISTIANSBURG,
Plaintiff,

v.

TRIANGLE EQUIPMENT COMPANY,
Defendant.

Bankruptcy No. 7–80–01040.

Adv. Nos. 7–81–0126, 7–80–0224.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

April 9, 1982.

James H. Fulghum, Jr., Roanoke, Va., for debtor.

George I. Vogel, II, Roanoke, Va., Trustee.

Thomas R. King, Jr., Asst. U. S. Atty., Roanoke, Va., Will E. McLeod, Tax Div., U. S. Dept. of Justice, Washington, D. C., for IRS.

Arthur P. Strickland, Roanoke, Va., for Allied Products, defendant.

Daniel R. Warman, Norfolk, Va., for Todd Farm Equipment, defendant.

Richard E. Viar, Roanoke, Va., for 1st National Exchange Bank, Montgomery County, defendant.

Donald W. Huffman, Roanoke, Va., for J. Atkinson.

Mark M. Lawson, Bristol, Va., for Credit Alliance, defendant.

William J. McGhee, Christiansburg, Va., for Bank of Christiansburg.

Kendall O. Clay, Radford, Va., for Sperry-New Holland and H. Jackson Darst, defendants.

M. Lanier Woodrum, Roanoke, Va., for Cates Building, defendant.

David Mullen, Christiansburg, Va., for J. I. Case Co. & Credit Alliance Corp., defendants.

Donald B. Irons, Blacksburg, Va., for First National Exchange Bank of Montgomery County, defendant.

## OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is the extent to which requested attorneys' fees are allowable under § 506(b) of the Bankruptcy Reform Act of 1978 (the Code), 11 U.S.C. § 506(b).[1]

The applicant, the law firm of Craft & McGhee (the firm), represented the Bank of Christiansburg (Bank) in an adversary proceeding before this Court. The Bank's proceeding for relief from the stay was consolidated with a suit by the bankruptcy trustee to sell property free and clear of liens. As a result of those consolidated proceedings, the Court determined the validity of the Bank's first and third lien deeds of trust covering certain real property held by the debtor, Triangle Equipment Company (Triangle). The Court also confirmed the validity of a second lien deed of trust of the same property to the First National Exchange Bank of Montgomery County (FNEB). The Internal Revenue Service holds perfected federal tax liens junior to the three consensual liens that attach to the subject property.

The indenture trustee under the first lien deed of trust, Mr. Craft, is a member of the applicant firm. The same firm, acting as counsel for the Bank, sought relief from the stay to foreclose on the property. There was never a question of the validity or amount of the first deed of trust or note. The only issue litigated in these proceedings was whether the secured creditor could foreclose on the property. At the conclusion of the hearing in these adversary proceedings, the Court granted the Bank and its trustee relief from the § 362 automatic stay to foreclose on the indentured property, with any surplus proceeds to be remitted to Triangle's bankruptcy trustee. The indenture trustee proceeded with the foreclosure sale of the pledged property. Despite evidence that the value of the property exceeded the total of all obligations secured thereby, the proceeds of the sale exceeded the amount of the first lien, but were insufficient to satisfy the second and third liens.

The law firm, through Mr. McGhee, has not applied to the Court, pursuant to Rule 219, Fed.R.Bankr.P.,[2] for approval of the

---

1. 11 U.S.C. § 506(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

2. Rule 219.
(a) *Application for Compensation or Reimbursement.* A person seeking compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared

indenture trustee's commission for executing the deed of trust. The law firm has also requested allowance of the Bank's attorneys' fees pursuant to § 506(b) of the Code.

Under § 506(b) of the Code, to the extent an allowed secured claim is secured by property the value of which exceeds the amount of the claim, the secured claim holder is entitled to interest on the claim as well as reasonable fees, costs, and charges provided under the agreement giving rise to the claim. In Virginia, if the terms of an indenture trustee's compensation are not specified in the trust document, that compensation is controlled by statute. *See Va. Code* § 55–59 (1981 repl. vol.) [3]; *Dillard v. Serpell*, 138 Va. 694, 123 S.E. 343, 345 (1924). In this case, the law firm has applied for trustee's compensation in the amount of five percent of the proceeds of sale.

The promissory note underlying the first lien deed of trust provides that if the note be "collected by suit or attorney," the debtor agrees to pay attorneys' collection fees in the amount of 25% of the amount of the note. Under prior bankruptcy law, it was established that the validity of such a provision in a secured note was a question of state law. *Manufacturer's Finance Co. v. McKey*, 294 U.S. 442, 450, 55 S.Ct. 444, 447, 79 L.Ed. 982 (1935); *Security Mortgage Co. v. Powers*, 278 U.S. 149, 153, 49 S.Ct. 84, 85, 73 L.Ed. 236, 13 Am.B.R. (N.S.) 556 (1928).

Some state laws provided that the exacting of a fee for collection of debts was a prohibitable penalty. In some instances, a fee was held to be additional interest and hence usurious. *See Citizens Nat'l Bank of Orange, Va. v. Waugh*, 78 F.2d 325, 326 (4th Cir. 1935); *Chestertown Bank of Md. v. Walker*, 163 F. 510 (4th Cir. 1908).

The validity of attorneys' fees under the Code, however, is a matter of federal bankruptcy law. The Code clearly says that an oversecured creditor's right to those fees should be based on the underlying agreement. 11 U.S.C. § 506(b). Thus, if the underlying agreement provides for fees, those fees may be appropriately paid from the proceeds of sale of the collateral. Section 506(b) qualifies payment of those costs and fees, however, allowing "*reasonable* fees, costs, or charges" (emphasis added).

Other courts do not agree on whether the determination of reasonableness of fees is a question of state or federal law under the Code. *Compare Mellon Bank v. Sholos*, 11 B.R. 782, 784–85, 8 B.C.D. 109, Bankr.L.Rep. ¶ 68,223 (CCH) (Bkrtcy.W.D.Pa.1981) (reasonableness is for bankruptcy judge to determine) *with United Va. Bank v. Virginia Foundry*, 9 B.R. 493, 497 (D.C.W.D.Va.1981) (reasonableness is to be determined by state law). In its reasoning, the *Sholos* court concluded that contractual validity of attorneys' fees would not bind a bankruptcy judge, even though those fees might be clothed with a rebuttable presumption of

---

and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf.

**3.** Virginia Code § 55–59. (1981 Replacement Volume) *How deed of trust construed; duties, rights, etc., of parties.—*

Every deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law, provided that unless otherwise provided therein, it shall be construed to impose and confer upon the parties thereto, and the beneficiaries thereunder, the following duties, rights and obligations in like manner as if the same were expressly provided for by such deed of trust, namely: . . .

(2) The grantor shall be deemed to covenant that he will pay all taxes, levies, assessments and charges upon the property, including the fees and charges of such agents or attorneys as the trustee may deed advisable to employ at any time for the purpose of the trust, so long as any obligation upon the grantor under the deed of trust remains undischarged. . . .

reasonableness under state law. 11 B.R. at 785. The *Sholos* court acknowledged that the bankruptcy judge is eminently qualified to determine reasonableness in each case. The bankruptcy judge has experience in determining reasonableness of fees in his Court. Furthermore, the bankruptcy judge has first hand knowledge of the proceedings in which the attorneys have been involved, and of the services those attorneys have rendered. *Id.* at 786.

The Fourth Circuit has ruled that courts in this circuit faced with the task of determining reasonableness of attorneys' fees should follow the standards established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). The factors to be considered include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

■ In this case, the same firm acted both as indenture trustee and as attorney for the creditor. There is no question that the firm as indenture trustee is entitled to compensation. The indenture trustee submitted documentation to the Court to substantiate costs of $16,641.75 incurred in executing the trust. The indenture trustee's commission is also a cost of disposition of the collateral. In a case such as this in which the proceeds of sale exceed the value of the secured creditor's lien, the Court may approve payment of reasonable costs, including the indenture trustee's commission, from the proceeds. Consequently, the trustee's commission required by the underlying agreement should be awarded to the firm-as-trustee for executing the deed of trust.

■ The firm further relies on the underlying agreement to support its application for attorneys' fees. The agreement provides for 25% attorneys' fees for collection by "suit or attorney." Twenty-five percent of the amount of the note would be approximately $66,827.00. The total remaining excess proceeds of sale, however, amount only to $29,549.00, or approximately 11% of the amount of the note. The firm's "application" for fees simply listed tasks completed in relation to the adversary proceeding. Rule 219 requires that an application for compensation or reimbursement include a "detailed statement" of services rendered and expenses incurred. The Court invited the firm to supplement its application to comply with Rule 219. The firm has not, however, detailed hours expended or hourly rates charged for the work done. In short, the application was significantly deficient in its presentation of detail.

Under ordinary, nonbankruptcy circumstances, a request for 11% attorneys' fees for collection of a note in default would not seem unreasonable. In this case, in the face of significant objections by the debtor, the debtor's trustee, and junior lienors, 11% attorneys' fees, $29,549.00, is not a reasonable compensation for this applicant firm. Collection effort by this firm consisted of filing a Proof of Claim with the Court and filing and trying an adversary proceeding for relief from the stay, which proceeding was consolidated with a trustee's proceeding to sell the property free and clear of liens.

The firm did make additional appearances in this Court as representative of the Bank. Those additional appearances, however, were as counsel for the Bank as third lienor, in an adversary proceeding filed to defeat the claim of the second lienor. The property did not yield sufficient proceeds to pay any of the bank's third lien claim. Efforts by this firm to protect the third lien

cannot be compensated from the fund recovered by the indenture trustee.

The Court finds, therefore, that a reasonable fee for this firm is the sum of $2,500.00. That fee is awarded on the basis of the complexity of the issues and the extent of this firm's representation of the creditor as first lienholder. The firm shall also be compensated for its costs as indenture trustee in the amount of $16,641.75, and shall be entitled to indenture trustee's commission in the amount of $16,500.00.

It is, therefore, hereby

ORDERED

that the law firm of Craft & McGhee is entitled to $35,641.75 in fees, costs, and charges.

It is further

ORDERED

that the remainder of the proceeds of sale shall be remitted forthwith to the debtor's trustee for distribution to junior lienors. The debtor's trustee shall render an order of distribution for the excess proceeds within ten days of the date of entry of the Order.