## MANUFACTURERS' FINANCE CO. *v.* McKEY, TRUSTEE IN BANKRUPTCY.

No. 522. Argued February 13, 14, 1935.—Decided March 4, 1935.

*Mr. Edward I. Rothbart,* with whom *Mr. Samuel A. Dew* was on the brief, for petitioner.

*Mr. Thomas L. Marshall* for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This writ brings here for consideration certain questions in respect of the enforcement of a contract between petitioner and Grigsby-Grunow Company (hereinafter referred to as the company) made October 5, 1933. The

contract purports to be one for the purchase of designated accounts receivable for which petitioner promised to pay 100% of the actual net amounts thereof, less a charge for interest on the purchase money outstanding and less compensation for certain services rendered or to be rendered by petitioner. Fifty per cent. of the actual net amounts was to be paid in cash upon acceptance of the accounts; and the remainder, with specified deductions and additions, was to be paid immediately upon payment of the accounts. All original checks, drafts, notes, etc., received by the company in full or partial payment of any of the accounts so purchased were to be delivered to petitioner at its office on the day of their receipt. Attorneys' fees, costs and expenses incurred by petitioner were to be paid by the company. Compensation for services was to be at the rate of 83½% of 1/30th of 1% of the net face amount of accounts for each day from the date of purchase. Total charges against the company, as estimated by the parties, would equal about 20% per annum upon the outstanding balance of cash advances up to November 24, 1933.

Among other services, petitioner agreed to furnish to the company specified information upon request in respect of customers; to furnish information and advice as to the most desirable method of keeping books, records, and accounts of the company; to give, upon request, financial and business advice; to obtain and have on hand at all times funds to make prompt remittance for acceptable accounts; to supply forms needed for assignment of accounts; to put its credit and collection department at the disposal of the company and to furnish advice and opinions as to the form and legality of the company's sales contracts with its customers.

On November 24, 1933, in a suit brought by a creditor against the company, a federal district court for the northern district of Illinois appointed receivers to preserve the property and assets of the company. The company was

solvent, having assets greatly exceeding its liabilities; and the receivers were directed to continue the business as a going concern and to do all things necessary to that end and to preserve the property. They were directed to take charge of all assets, books of account, etc.; to employ and discharge and fix compensation of employees, agents, etc.; to collect, sell and liquidate accounts, etc.; and to purchase on credit or otherwise such supplies and equipment as might be necessary to continue the business as a going concern. All persons were enjoined from interfering with the receivers in their possession of the property, the administration of their trust, or in the performance of the duties imposed upon them.

The receivers refused to pay over to petitioner anything collected on the assigned accounts unless directed to do so by the court. Subsequently, such direction being given, the receivers from time to time paid to petitioner various sums which, together with an amount collected by the petitioner itself, finally liquidated the amount due petitioner up to the time when the receivers were appointed. This liquidation was effected between the date of the receivership and December 29, 1933—a period of 35 days. Petitioner had already (on November 29, 1933) intervened in the receivership proceeding with a petition seeking compliance on the part of the receivers with the terms of its contract; and, after the liquidation to the extent stated above had been effected, petitioner continued the proceeding under its petition, demanding payment at the contract rate of a sum aggregating, at the end of the 35-day period, $4,394.48, together with reasonable attorneys' fees and costs. No accounts were purchased or assigned after the receivership, and the only obligation which remained was to carry out the terms of the contract in so far as they affected the accounts already assigned.

The gross sum which petitioner received under the contract for the time prior to the receivership was equal to

the estimated 20% per annum on the moneys actually advanced to the company. The amount which it was claimed had accrued during the 35-day period was equivalent to an average of about 28.3% per annum from the date of the appointment of the receivers. The petition asked for reasonable attorneys' fees without specifying any amount. The only testimony on the subject was that of an attorney who said the sum of $7,800 was reasonable.

The district court entered a decree in favor of petitioner for $1,087.93, being at the rate of 7% instead of 28.3% per annum upon the outstanding balances. That court denied all further relief on the sole ground that petitioner's demand was inequitable and that in making it petitioner had not come into equity with clean hands. The decree was affirmed by the court of appeals. 72 F. (2d) 471. The basis of that court's decision cannot be better stated than in its own words [p. 473]:

" The insistence of appellant upon its claim for the full rate of interest plus attorneys' fees at a preposterous rate, when it appeared that there was no more business to be done under the contract because of the receivership of the Company savors too much of the exaction of the pound of flesh from the creditors of the insolvent company to be enforcible in a court of equity. If this case arose in an action at law between the original parties it may well be that the court could not refuse to enforce the contract according to its strictest terms. But where the creditor goes beyond the practice of the parties under the original contract and tries to enforce rights never asserted against the other contracting party, and in addition tries to collect counsel fees exceeding 177% of the maximum amount claimed against the receiver who is attempting to salvage the assets for the benefit of the other creditors who have a substantial interest in the estate of the debtor, we can not

feel that a court of equity is any place for him to press his demands."

February 18, 1934, while the appeal was pending in the court of appeals, a petition in bankruptcy was filed in the federal district court against the company; and this was followed by an adjudication of bankruptcy and the selection, April 16, 1934, and qualification, later, of the respondent McKey as trustee in bankruptcy. Subsequently, upon the application of both parties, McKey was substituted in the court of appeals as appellee.

In connection with the discussion which follows, two considerations are to be borne in mind. 1. When the receivers were appointed November 24, 1933, the company was solvent, having assets exceeding its liabilities in the sum of $13,000,000, and there is nothing in the record to suggest that this condition of solvency did not continue until after the completion of the 35-day period here involved. 2. What effect, if any, an act of bankruptcy might have had upon the life or operation of the contract we need not determine, since it is plain that the appointment of a receiver upon the application of a creditor is not an act of bankruptcy except in cases of insolvency. Title 11, U. S. C. § 21 (a), as amended May 27, 1926, Title 11, U. S. C. Supp. VII, § 21 (a) (5); *Nolte* v. *Hudson Nav. Co.*, 8 F. (2d) 859, 866; *Meek* v. *Beezer*, 28 F. (2d) 343, 345; *In re Edward Ellsworth Co.*, 173 Fed. 699, 700–701; *In re Guardian Building & Loan Assn.*, 53 F. (2d) 412, 415.

The effect of the contract was to bind the company as agent of petitioner to collect the purchased accounts and deliver to the latter the proceeds in kind from day to day as fast as they were collected. The receivers were equally bound.

The extent of the benefit which accrued to the company by reason of the advantages which evidently were expected to result from the opportunity to avail itself of the

use of a large part of the proceeds of the accounts in advance of their payment, and from the services of petitioner, is not a matter for judicial inquiry. The parties dealt at arm's length. The contract was voluntarily executed by the board of directors of the company. It is not suggested that there was any mistake or any fraud or overreaching on the part of petitioner. The contract, it is conceded, is valid under the statutes of Illinois as construed by the Supreme Court of the State, *Tennant* v. *Joerns*, 329 Ill. 34; 160 N. E. 160; and, so far as the record discloses, it was performed on the part of petitioner in all respects up to, at least, the appointment of the receivers.

But the court below refused to be bound by the law of Illinois, upon a theory which it had advanced in a former case, *In re Chicago Reed & Furniture Co.*, 7 F. (2d) 885, namely, that a state law can not " abrogate the rule that courts of equity will not lend their aid to enforce contracts which upon their face are so manifestly harsh and oppressive as to shock the conscience." With that view as here applied we are unable to agree.

The contract was in force when the receivers were appointed; and it continued effective until the expiration of thirty-five days thereafter, at which time it was brought to an end. During that period, if there were no default on petitioner's part, the contract, in so far as it remained unperformed, was enforcible against these receivers as theretofore it had been against the company. *Merchants' & Manufacturers' Securities Co.* v. *Johnson*, 69 F. (2d) 940, 945; compare *Fosdick* v. *Schall*, 99 U. S. 235, 251.

The mere fact that a party is obliged to go into a federal court of equity to enforce an essentially legal right arising upon a contract valid and unassailable under controlling state law does not authorize that court to modify or ignore the terms of the legal obligation upon the claim,

or because the court thinks, that these terms are harsh or oppressive or unreasonable. A party may stand upon the terms of a valid contract in a court of equity as he may in a court of law. "If he asks no favors, he need grant none. But if he calls on a court of chancery to put forth its extraordinary powers and grant him purely equitable relief, he may with propriety be required to submit to the operation of a rule which always applies in such cases and do equity in order to get equity." *Fosdick* v. *Schall, supra,* at p. 253. The petitioner here did not seek equitable relief. It sought an enforcement of its legal rights; and, as said by the Supreme Court of Pennsylvania, "Legal rights are as safe in chancery as they are in a court of law, and however strong an appeal may be to the conscience of a chancellor for equitable relief, he is powerless to grant it if the one from whom it must come will be deprived of a legal right." *Colonial Trust Co.* v. *Central Trust Co.,* 243 Pa. 268, 276; 90 Atl. 189. The maxim "he who seeks equity must do equity" presupposes that equitable, as distinguished from legal, rights, substantive or remedial, have arisen from the subject matter in favor of each of the parties; and it requires that such rights shall not be enforced in favor of one who affirmatively seeks their enforcement except upon condition that he consent to accord to the other his correlative equitable rights. But it is well settled, this court said in *Hedges* v. *Dixon County,* 150 U. S. 182, 189, "that a court of equity, in the absence of fraud, accident or mistake, cannot change the terms of a contract."

*Missouri, Kansas & Texas Trust Co.* v. *Krumseig,* 172 U. S. 351, dealt with the precise question now under consideration. The situation presented there was the converse of that presented here, but the applicable principle is the same. There, suit was brought in equity in a state court to cancel a mortgage and certain notes secured there-

by, on the ground that they embodied a contract bad
for usury under a state statute. The suit was removed
to a federal district court. That court granted the relief
which was sought, conditionally, and its decree was
affirmed by the circuit court of appeals. The state law
declared such a contract to be wholly void. Both courts,
however, invoking the equitable maxim " he who seeks
equity must do equity," held that the plaintiff could not
have the relief except on the generally recognized equi-
table condition that he pay to the lender the money loaned
together with legal interest. This court, rejecting the
view of the lower courts that a federal court in the exer-
cise of its jurisdiction cannot be deprived of the power or
relieved of the duty to enforce and apply the established
principle of equity embodied in the maxim, said (pp.
358–359):

" We think it a satisfactory reply to such a proposition
that the complainants in the present case were not seek-
ing equity, but to avail themselves of a substantive right
under the statutory law of the State. . . . With the policy
of the state legislation the Federal courts have nothing
to do. If the States . . . think that the evils of usury
are best prevented by making usurious contracts void,
and by giving a right to the borrowers to have such con-
tracts unconditionally nullified and cancelled by the
courts, such a view of public policy, in respect to contracts
made within the State and sought to be enforced therein,
is obligatory on the Federal courts, whether acting in
equity or at law. The local law, consisting of the ap-
plicable statutes as construed by the Supreme Court of
the State, furnishes the rule of decision."
Compare *Brine* v. *Insurance Co.*, 96 U. S. 627.

Again, in *Columbus* v. *Mercantile Trust Co.*, 218 U. S.
645, 662, this court declined to apply the maxim in favor
of a plaintiff who had failed to prove his case against a

defendant, who had filed a cross-bill for defensive relief, holding that the maxim applied only against one who had affirmatively sought equitable relief.

It seems to be conceded, or, if not, it must be, that in an action at law against the receivers the court would have been bound to enforce the contract under review strictly in accordance with its terms. And, not to go beyond the case in hand, the rule is not otherwise where plaintiff, precluded by judicial order from proceeding at law, is obliged to submit the determination of his strictly legal rights to a chancery court because it has plenary control of the remedy.

The maxim that " he who comes into equity must come with clean hands," which the district court invoked and made the basis of its decision, for reasons similar to those already stated, is equally inapplicable. Certainly no unconscionable or inequitable conduct can be attributed to petitioner because it undertook to secure the fruits of a perfectly valid—albeit a hard—contract in the only court to which it could apply without being subject to a charge of contempt. Moreover, the maxim, if applicable, required the district court to halt petitioner at the threshold and refuse it any relief whatsoever—not to compromise with it, as the court did, by allowing a part of what was claimed. It seems plain enough that in no aspect of the case is any equitable principle involved.

The decisions of the court below in the present case and in the *Reed Furniture Co.* case, *supra,* are contrary to every other decision called to our attention or that we have been able to find involving a similar situation. A case practically the same as that presented here is *Merchants' & Manufacturers' Securities Co.* v. *Johnson, supra.* The contracts there involved were identical with the one here, and were likewise governed by the law of Illinois denying to a corporation the defense of usury. A receiver had been

appointed to continue the business of the corporate parties to the contract. In deciding the case, the court of appeals of the Eighth Circuit emphasized the fact that the receiver was appointed (as the receivers were here) not to wind up the affairs of the corporations but to carry on their business as going concerns; and it held that he succeeded to their property subject to the contract rights which obtained at the time of his appointment. "He had no greater or different rights than those that might have been asserted by the companies." Reversing a decree of the district court, the court of appeals directed the entry of a decree in favor of the securities company for the full amount claimed, that amount to constitute a special lien upon all accounts receivable still unpaid and upon the proceeds of the same in the hands of the receiver. *In re International Raw Material Corp.*, 22 F. (2d) 920, involved a contract which, although not in identical terms, was in principle the same as that here under consideration. That court, resting upon a New York statute denying to a corporation the defense of usury, enforced the contract against a trustee in bankruptcy. It considered and definitely rejected the doctrine announced in the *Reed Furniture Co.* case, holding there was no justification for nullifying the agreement of the parties because the interest and commissions deliberately arranged were too large to satisfy the ideas of a court. See, also, to the same effect, *In re Gotham Can Co.*, 48 F. (2d) 540; *Ramsey* v. *Marlin Firearms Corp.*, 14 F. (2d) 314; *Estes* v. *E. B. Estes & Sons*, 24 F. (2d) 756.

We see no escape from the logic of these decisions.

The receivers alleged as a defense, apparently by way of recoupment, that they had expended a large sum of money in making collection of the accounts which inured to the benefit of petitioner by assuring to it a return of its advances. The district court found that the receivers, among other things, had expended $35,000 in advertising

in order to maintain the good will of the company and preserve its receivables as live and valuable assets, and seemed to think that the petitioner had been benefited thereby. No suggestion, however, is made by either of the lower courts or by the respondent as to how much of these expenditures should be borne by petitioner; and the record affords no information by which the amount can be calculated. Even less does it appear how much, if any, of these expenditures related to the assigned accounts.

Whether, upon further and more definite evidence, under all the circumstances and consistently with the provisions of the contract, petitioner may be held for any part of these expenditures, we do not determine.

Both lower courts refused to allow any amount for attorneys' fees, apparently on the ground, which we have rejected, that to do so would be contrary to equitable principles. The contract seems to contemplate a reasonable allowance for such fees, but the amount, if any, remains to be fixed by the district court upon consideration of all pertinent facts relating to services rendered by the attorneys after the date of the receivership; and with due relation to its ultimate determination upon the merits.

As already appears from what has been said, the decrees below rest wholly on the untenable assumption that petitioner's rights are subject to denial or curtailment in virtue of equitable principles applicable only against one who affirmatively has sought equitable relief; and here that was not the case. The question, or extent, of petitioner's legal rights—relieved of this assumption—has been neither determined nor considered upon the facts or the applicable law. The duty and responsibility of that consideration and determination lie primarily with the lower courts; and, in the light of the peculiar circumstances disclosed by the record, should not, we think, be assumed in the first instance by this court. To the end that such duty and responsibility may be discharged, we conclude

454

that the decrees of both courts should be reversed and the cause remanded to the district court for further proceedings in conformity with the foregoing opinion.[1]

We refrain from expressing any opinion as to the effect of any change of circumstances, due to the receivership and liquidation of petitioner's claims during the period in question, upon the amount, if any, of petitioner's recovery, or any opinion in respect of the law applicable thereto.

*Reversed.*

---

[1] This disposition of the case finds precedent in a large number of decisions of this court, among which the following are cited as examples: *Owensboro* v. *Owensboro Waterworks Co.*, 191 U. S. 358, 372; *Wilson Cypress Co.* v. *Del Pozo*, 236 U. S. 635, 656-7; *Brown* v. *Fletcher*, 237 U. S. 583, 586; *Gerdes* v. *Lustgarten*, 266 U. S. 321, 327; *Twist* v. *Prairie Oil Co.*, 274 U. S. 684, 692; *United States* v. *Brims*, 272 U. S. 549, 553; *Grant* v. *Leach & Co.*, 280 U. S. 351, 363.