Houghten et ux., Appellants, *v.* Restland
Memorial Park, Inc.

Argued October 3, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Julius L. Schoenberg,* with him *John F. White,* for appellants.

*T. F. Ryan,* with him *Joseph H. Bialas,* of *Bialas & Ryan,* and *Sidney Gottlieb,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, January 6, 1942:

This appeal is from the decree of the court below sustaining exceptions to the report of the auditor appointed by the court to distribute the funds in the hands of the receiver of Restland Memorial Park, Inc., a Pennsylvania corporation, organized for cemetery purposes.

Acting for himself and two others, as promoters of the proposed cemetery corporation, one Harry J. Horne obtained a written option, dated April 25, 1935, to purchase a tract of land owned by John Kukurin and William J. Shatlock, in Patton Township, for the price of $48,000. A charter was obtained in June, 1935, in the name of Restland Memorial Park, Inc., and the option was thereupon assigned to the corporation, in consideration of the issuance to the promoters of all its common stock. The land, which was of a value of less than $10,000 according to the affidavit for stamp tax purposes made by the attorney for the grantee, was conveyed to the corporation by Kukurin and Shatlock, pursuant to the option agreement, by deed dated July 2, 1935, reciting the consideration of one dollar. In September or October of 1935 the corporation issued 4,800 shares of preferred stock, of a par value of $10 per share, to Kukurin and Shatlock, who were then made members of the board of directors.

Lacking the funds necessary to develop the land for cemetery purposes, the corporation entered into an arrangement with Ferry C. Houghten and his wife, Mattie L. Houghten, evidenced by a writing under seal, dated November 15, 1935, whereby the Houghtens agreed to transfer to the corporation their equity in an apartment house property and building and loan stock owned by them, of a face value of $5,240, which the corporation agreed to accept, together with $500 in cash, as a loan to it of $20,000, this being the agreed valuation, and to

issue in payment thereof its promissory note for such amount and for an "additional like amount", to be paid "as a bonus." The Houghtens paid over the $500 in cash and transferred to the corporation the real estate and building and loan stock, pursuant to the agreement, and in return they received two notes, in the amount of $20,000 each, payable November 15, 1940, the one to bear no interest for three years and the other, representing the "bonus", to pay no interest for five years. In addition, the Houghtens received ten shares of common stock and Fred C. Houghten was also made a member of the board of directors for the life of the agreement.

The corporation carried on until 1939, but was always short of funds. On April 28, 1939, upon petition of the Houghtens, the court below appointed the Commonwealth Trust Company of Pittsburgh liquidating receiver of the corporation and all creditors were directed to probate their claims within a fixed time. Among others, Kukurin and Shatlock filed their claim, as unpaid vendors, in the sum of $48,000 and interest, less a small credit, and the Houghtens filed claim on the two notes. On August 23, 1939, upon application of the receiver for leave, the court directed a public sale of the real estate, the sole asset of the corporation, "free of all liens and encumbrances" but "subject to the rights, estate and interest" of purchasers of grave spaces. The land was subsequently sold, with approval of the court, for the sum of $15,200, which was the fund for distribution.

On September 30, 1940, the receiver filed its first and final account, including in its tentative schedule of distribution the claim of Kukurin and Shatlock and also that of the Houghtens on the notes. Objections were filed by Kukurin and Shatlock to the allowance of the claim of Mr. and Mrs. Houghten, and the Houghtens objected to various claims, including that of Kukurin and Shatlock, whereupon the court appointed an auditor "for the purpose of taking testimony and of adjudicating the disputed claims and to make his report and recommenda-

tion to the court." On March 1, 1940, the auditor, William S. Doty, Esq., filed a report in which he disallowed the claim of Kukurin and Shatlock and allowed, in full, the claim of the Houghtens. Exceptions to the auditor's report, filed by Kukurin and Shatlock, were sustained by the court, after hearing, and a decree was entered allowing their claim but disallowing the claim of the Houghtens except to the extent of $20,000, with interest. This appeal by the Houghtens followed.

Appellants' contention that the court below erred in passing upon the exceptions filed by Kukurin and Shatlock to the auditor's report, on the ground that the report, which was filed with the prothonotary, who marked it "confirmed nisi", had become confirmed absolutely, in the absence of "objections" in ten days, as required by a local rule of court to renew exceptions filed with the auditor, is without merit. The appointment of the auditor was not for a purpose within Equity Rule 65, permitting appointment of an accountant or other expert, as an assessor, in cases involving complicated accounts, but solely for the exercise of exclusively judicial functions, which it was beyond the power of the court to delegate to an auditor under Equity Rule 15. The appointment of the auditor, over the objection of Kukurin and Shatlock, was, therefore, a nullity, as to them, and the subsequent proceedings before him were, as to them, without legal effect, as the court below apparently recognized, considering the case as though it were de novo. See *Rowley v. Rowley*, 294 Pa. 535, 540; *Curtis v. Mankus*, 295 Pa. 381, 387; *Buse & Caldwell Dissolution Case*, 328 Pa. 211, 216. Aside from this, it is clearly within the powers of a court of equity to set aside a confirmation of the report of its own officer, not entered after a hearing, where an application for that purpose is made and pursued with due diligence, as it was here. See *Correll, Receiver's Account*, 283 Pa. 277, 280; *McHenry v. Finletter*, 23 Pa. Superior Ct. 636, 639.

In passing upon the merits, the contentions of appellants with respect to the two claims in question require separate consideration:

## KUKURIN AND SHATLOCK CLAIM

The allowance of the claim of Kukurin and Shatlock as unpaid vendors, in the amount of $58,587.38, is objected to by appellants solely on the ground that the status of this claim is res adjudicata, by reason of an earlier adjudication by the court below, from which no appeal was taken, wherein it is contended the court determined that Kukurin and Shatlock accepted the preferred stock issued to them in 1935 as payment in full, and that they were not entitled to participate as creditors, but as shareholders only.

On September 13, 1939, following the order of the court directing the receiver to sell the real estate of the corporation, but prior to the sale, Kukurin and Shatlock filed a petition asking that the court declare them to be unpaid vendors of the land and for the imposition of an equitable lien in their favor for the unpaid balance of the purchase price, the sale to be stayed meanwhile. They set forth the circumstances of the conveyance to the corporation, and admitted the receipt of the preferred stock, but averred it had been given, and was accepted, as collateral security only, for the purchase price of $48,000, to be paid by creation of a sinking fund for that purpose, as provided in the option agreement. The receiver filed an answer, alleging merger of the option agreement in the deed and that Kukurin and Shatlock had accepted the preferred stock in full payment for the land, as shown by the books and records of the corporation. The Houghtens also filed an answer to this same effect. On the issues thus raised a hearing was had, lasting four days, after which the chancellor entered an adjudication, concluding that there was no warrant in law for the imposition of a lien such as was sought and, accordingly, dismissed the petition. Kukurin and Shatlock thereupon

filed a petition, asking the court to adjudicate the unpaid balance of the purchase price due them and, in lieu of imposing a lien, to direct that such unpaid balance be recognized as a claim payable out of the proceeds of sale. The chancellor refused the petition "without prejudice to the petitioners", and they thereafter filed exceptions to the adjudication of the chancellor, as made, and to his failure "to fully adjudicate the entire subject matter before him on the record." After hearing on the exceptions, the court en banc filed an opinion and entered a final decree, dismissing the exceptions "in the light of the foregoing opinion."

Appellants' assertion that the chancellor made findings of fact that Kukurin and Shatlock had been paid in full, in preferred stock, and that these findings were approved by the court en banc, which is the basis of their contention as to what was adjudicated in this proceeding, is not sustained by the record. The findings of the chancellor are that "the consideration for this property was the issuance of 4,800 shares of preferred stock . . . *as shown by the books of the company*", "*the books of the company show* that the real estate was acquired from the petitioners by the transfer of 4,800 shares of preferred stock, the stock being in *ostensible payment* thereof", and that *"on the liability side . . . it is shown* that 4,800 shares of preferred stock were issued to the petitioners, in payment thereof". None of the findings are to the effect that the fact is as "shown by the books of the company", and they were not intended to be so construed, as appears from the statements of the chancellor, under the heading "Discussion", that "it is not denied that the petitioners have the right to sue for the unpaid consideration" and "they still have the right to present their claim before the receiver at the appropriate time and place." Moreover, had the chancellor found the facts to be as contended by appellants, the decree entered by the court en banc could not be regarded as an approval of any such findings. The decree does not dismiss the ex-

ceptions without qualification, but dismisses them "in the light of the foregoing opinion", wherein the court expressly declared the status of Kukurin and Shatlock to be that of "general creditors" for "unpaid balance due for the land conveyed pursuant to option agreement, viz: $48,000.00 with interest from August 1, 1935 (the date when deed was delivered and recorded) to April 26, 1939 (the date of appointment of receiver herein), less the amount of $194.96 paid on account February 15, 1936", whose claim *"shall* not take precedence over any other claims but *shall* participate with all general claims."

It is apparent, from an examination of the record, that if the earlier proceeding amounted to a judicial determination of anything respecting the status of Kukurin and Shatlock in the fund for distribution, it was that they are not limited to the rights of shareholders but are entitled to participate as general creditors, and the matter thus becomes res adjudicata against the position of appellants and not in their favor, as they contend. It follows that appellants' objection to the allowance of this claim is not well taken and it will, therefore, be allowed.

## HOUGHTEN CLAIM

It is conceded that the Houghtens are entitled to participate in the fund, as creditors, in the amount of the first of the two notes given them pursuant to the sealed agreement dated November 15, 1935, and there is no objection to the allowance of their claim to this extent, with interest. The second note, representing the "additional like amount" provided for by the agreement and referred to therein as a "bonus" for the making of the loan, is objected to, however, on the grounds (1) that the agreement with the Houghtens constituted a fictitious increase of indebtedness contrary to Article XVI, section 7, of the Constitution, (2) that the transaction was entered into without the consent of the shareholders at a meeting held after six days' notice, as required by law, before incurring indebtedness other than "in the usual course

of corporate business" (Business Corporation Law of 1933, P. L. 364, section 309), and (3) that the agreement for the giving of the bonus "is an illegal contract of the kind as to which the courts never lend their aid by enforcement."

Article XVI, section 7, of the Constitution was not intended to throttle or severely impair the corporate life of a corporation in need of funds to prosecute or extend its business, particularly where, as here, the corporation had just been launched into active life, by prohibiting the negotiation of securities, issued by it in an effort to finance its requirements, for an amount less than their face value. As was stated in *Miller v. Hellam Distilling Co. (No. 1)*, 57 Pa. Superior Ct. 183, 186: "To so hold would not only cause severe financial difficulties to the corporation but would be contrary to a settled business policy which has been recognized by the profession as being in accordance with the law and in nowise violating constitutional restrictions." The primary object of the constitutional provision was to prevent the jeopardizing of the corporate property and to stop frauds upon stockholders and innocent purchasers, by the issuance of securities not fairly representing money or property received by the corporation, and consistent with this purpose, all that is required is that transactions involving the disposition of corporate securities must be bona fide, and not a mere devise to evade the law and impose a greater obligation upon the corporation than there is any occasion for it to assume, in order to obtain the consideration received therefor. See *Big Spring Elec. Co. v. Kitzmiller*, 268 Pa. 34, 38-39. Here there is no suggestion that the corporation, which was in urgent need of funds and was without any credit standing whatever, could have obtained the necessary funds elsewhere upon more favorable terms, and the good faith of all the parties in the execution of the agreement, pursuant to which the two notes in question were given, is conceded. In these circumstances, the disparity between the agreed value of

the assets transferred to the corporation and the face amount of the two notes given in payment, furnishes no basis for viewing the transaction with suspicion and, the good faith of the transaction being conceded, no fictitious increase of indebtedness, within the meaning of that phrase as used in Article XVI, section 7 of the Constitution, is involved: *Big Spring Elec. Co. v. Kitzmiller,* supra, 39.

The objection of Kukurin and Shatlock that the resolution of the board of directors, of which they were members, unanimously approving the transaction evidenced by the sealed agreement of November 15, 1935, and authorizing its execution, was not preceded by consent of the shareholders is not seriously pressed. Assuming that they have any standing to raise such objection, the omission to obtain the antecedent consent of the shareholders at a meeting called for the purpose, upon sixty days' notice, as required by statute, becomes immaterial, since it appears that the transaction was unanimously approved at the next annual meeting of the stockholders. See *Miller v. S. Hills Lumber & Supply Co.,* 334 Pa. 293, 299; *Bonini v. Fam. Theatre Corp.,* 327 Pa. 273, 282; *McCay v. Luzerne & Carbon Co. M. T. Co.,* 125 Pa. Superior Ct. 217, 223. Moreover, under section 305 of the Act of 1933, reënacting section 2 of the Act of May 12, 1925, P. L. 615, the corporation is liable on obligations executed by the president or vice president and the secretary or treasurer, unless at the time of the execution the holder was chargeable with knowledge that they were not properly authorized. See *Miller v. S. Hills Lumber & Supply Co.,* supra, 298, and cases there cited. The Houghtens were not chargeable with such knowledge and, the corporation having received the full benefit of their performance, neither it nor its receiver can evade responsibility on the two notes and agreement, executed to them by the appropriate officers of the corporation, on this ground. As was said in *Presbyterian Board v. Gilbee,* 212 Pa. 310, 314: "It is repugnant to every sense of jus-

tice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority. A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance."

The contention that the agreement for the bonus is illegal might have some validity, on the ground that it is, in substance, an attempt to circumvent the usury laws, were it not for section 313 of the Act of 1933, which provides as follows: "No business corporation shall plead or set up usury, or the taking of more than six percent interest, as a defense to any action brought against it to recover damages on, or to enforce payment of, or to enforce any other remedy on, any mortgage, bond, note, or other obligation executed or effected by the corporation." Under the statute we take it that where, as here, there is no suggestion of any mistake or any fraud or overreaching, the borrower, if a corporation, can no longer discharge its obligation, voluntarily assumed, by paying the amount of the loan and six percent interest, but must pay all that it promised. See *Eichleay, Jr., Co. v. Antonoplos,* 309 Pa. 411, 417. In an action at law against the corporation the Houghtens would, by virtue of the statute, have the legal right to insist that the agreement and two notes be enforced strictly according to their terms, and they are not deprived of this right because, precluded by the appointment of a receiver for the corporation from proceeding at law, they were obliged to submit the determination of their claim to a court of equity. See *Manufacturers' Finance Co. v. McKey,* 294 U. S. 442, 452. As stated in *Colonial Tr. Co. v. Central Tr. Co.,* 243 Pa. 268, 276: "Legal rights are as safe in chancery as they are in a court of law, and however strong an appeal may be to the conscience of a chancellor for equitable relief, he is powerless to grant it if the one from whom it must come will be deprived of a legal right."

After due consideration of all the objections to this claim, none of which is supported by a single citation of authority, we are convinced that there is no merit in any of them, and that the exceptions to its allowance should have been dismissed.

The decree of the court below is modified to direct that the exceptions to the allowance of the claim of Ferry C. Houghten and Mattie L. Houghten be dismissed. As so modified, the decree is affirmed, and the record is remitted for distribution of the balance in hand, on a pro rata basis, in accordance with this opinion. Costs of this appeal to be paid one-half by John Kukurin and William J. Shatlock and one-half by Ferry C. Houghten and Mattie L. Houghten.