### In the Matter of ADVANCE PRINTING AND LITHO COMPANY.

### No. 64–50.

United States District Court
W. D. Pennsylvania.

March 16, 1967.

M. E. Maurer, Wexler, Mulder & Weisman, Philadelphia, Pa., for Rosenthal & Rosenthal.

Joseph Mackrell, Erie, Pa. (local counsel) for Rosenthal & Rosenthal, Inc., Knox, Pearson & McLaughlin, Erie, Pa.

Warren W. Bentz, Erie, Pa., Trustee in Bankruptcy.

W. Louis Schlesinger, Erie, Pa., Atty. for Petitioning Creditors.

William Washabaugh, Jr., Referee in Bankruptcy.

### OPINION ON PETITION FOR REVIEW OF DECISION OF REFEREE

WILLSON, District Judge.

In this bankruptcy case, a secured creditor, Rosenthal & Rosenthal, Inc., has petitioned this Court, pursuant to the

provisions of 11 U.S.C.A. § 67, to review a decision and order of the Referee entered January 10, 1967, in this matter. The order complained of allowed but partial payment, on a secured claim, of Rosenthal's against the bankrupt, Advance Printing & Litho Company.

On May 6, 1963, Advance, a Pennsylvania corporation, executed a judgment note in the face amount of $26,000, payable to Rosenthal in 35 consecutive monthly installments of $722.22 and a final, monthly installment of $722.30, each due the 6th of each month succeeding. The note also provided for interest on each installment at the rate of 6% per annum from date, acceleration in case of default of any of the installments, and a 15% attorney's collection fee. Advance executed 36 promissory notes, corresponding in amount, maturity date and interest to the 36 installments due under the judgment note. Advance also executed a security agreement which granted Rosenthal, as collateral for payment of the $26,000, a security interest in all its machinery and equipment, including future acquisitions. The security agreement was filed of record in accordance with the provisions of Article IX of the Uniform Commercial Code, and so had become, prior to four months preceding this bankruptcy, a perfected security interest.

In return for the notes and security interest, Rosenthal disbursed $26,000 as follows: $732.98 for appraisal charges, attorney fees and expenses; $19,267.02 to Advance or its other creditors; and $6,000 to itself for "charges in connection with this loan." The practical effect of this transaction was that Advance, in return for a net loan of $19,267.02, had obligated itself to repay $26,000, together with 6% interest, over a three-year period.

The petition in this involuntary proceeding was filed on May 14, 1964, one year and eight days after the date of the judgment note. At the time of bankruptcy, Advance had made payment of eight installments, those corresponding to notes numbered 1 through 7, and 9; and had defaulted on four installments, those corresponding to notes numbered 8, and 10 through 12. Rosenthal did not enter judgment on the note or take any steps to enforce its rights under the security agreement until after bankruptcy.

The receiver [now the trustee] had the bankrupt's machinery and equipment appraised; since the appraisal figure, $41,880, indicated that the bankrupt estate might have an equity in the machinery beyond the lien of the Rosenthal security interest, the receiver petitioned the Referee for leave to sell the machinery and equipment at public sale, divested of liens. Rosenthal opposed this petition and filed its own petition for reclamation. The Referee ordered that the public sale be held, and that the lien of Rosenthal be transferred to the fund realized by the sale, which aggregated, before expenses, $30,596.50.

After the sale, the trustee opposed Rosenthal's claim to payment of the entire unpaid balance of the $26,000 as a secured claim. The Referee allowed payment of Rosenthal's claim as a secured claim only to the extent of $14,222.24, a figure arrived at by subtracting the total of the installments paid from $20,000, the amount the Referee found to be the loan. Payment of the additional $6,000 was allowed but was subordinated to payment in full of the claims of all priority and general creditors, or in effect disallowed. The Referee also concluded that no attorney's collection commission was allowable on Rosenthal's claim.

In its petition for review, Rosenthal alleges that the Referee erred in three respects: first, in failing to grant its petition for reclamation of the personalty which was security for the loan made by it to Advance; second, by failing to allow it the full amount of its claim as a secured claim; and third, by depriving it of certain of its constitutional rights.

On brief, Rosenthal has concentrated on one of these assignments of error: the failure of the Referee to allow it the full amount of its claim as a secured claim.

In its brief, Rosenthal states the question before the Court in this fashion:

"[W]hether a referee can change the terms of a written obligation to conform to the trustee's or his own standards of what constitutes a proper charge for the use of money."

The Referee, in his Certificate, states the question a bit differently:

"[W]hether the Referee erred in allowing the claim of Rosenthal * * * in the amount of the balance of $14,222.24 due it in respect to its loan of the sum of $20,000.00 fully secured under a security interest against printing machinery and equipment sold by the trustee in bankruptcy for the sum of $30,596.50 which had a value at all times in excess of the amount of said loan * * * instead of the additional $6,000.00 plus interest at the rate of 6% per annum claimed by said creditor under notes and a security agreement it required the debtor to execute in the sum of $26,000.00 plus interest at 6% per annum when said creditor had said machinery and equipment appraised at an expense to the debtor of $377.73 which it deducted from its $20,000.00 advance to the debtor along with attorney fees and other additional expense totaling in all $732.98, and in subordinating its claim for said additional $6,000.00 and interest to payment in full of all priority and general claims."

The Referee's statement of the question and his decision in this matter are consonant with and derive from the analysis of the situation which he sets out in his memorandum:

"[T]he creditor advanced $20,000.00 on the security of specific assets which it had appraised at the debtor's expense and against which it perfected a lien on said debtor's payment of ample attorney fees therefor, * * * said collateral was worth even at forced public sale in bankruptcy proceedings considerably more than the $20,000.00 initially loaned and the $26,000.00 for payment of which it required execution of the obligating instruments. There

were therefore no risks undertaken by the creditor which would support consideration of an allowance to it of more than the usual legal rate of interest as against the claims of unsecured creditors involved in this bankruptcy distribution under the equitable principles uniformly held applicable in such cases. * * * "

■■ It is to be especially noted at this point that the Referee has found facts which are clearly stated in the memorandum attached to his certificate. His findings of fact are undisputed. Therefore, the issue before this Court is one of law. Under General Order 47, this Court is bound to accept the Referee's findings of fact unless clearly erroneous. As they are uncontroverted, they are accepted. However, this Court has reluctantly come to the conclusion that the Referee has misapplied the law. His conclusions of law are, therefore, erroneous and are set aside.

The authorities relied upon by the Referee in his application of equitable principles to the controversy at bar involve factual situations much more extreme than that here encountered. In Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L. Ed. 162 (1946), the mortgage indenture executed by the bankrupt provided for payment of interest on defaulted interest coupons. The Supreme Court disallowed the payment of interest on interest on the express grounds that since the default was caused by court order, to allow interest on interest in these circumstances would be inequitable. In re Magnus Harmonica Corp., 262 F.2d 515 (3d Cir. 1959) involved interest on interest also, in that the creditor had, although not authorized to do so by the terms of the agreement between it and the bankrupt, added the amount of unpaid monthly "service charge" to the unpaid principal for purposes of computing the next month's interest. The Court of Appeals held that although the trustee could not recover the amount of interest thus overcharged prior to bankruptcy, because the bankrupt had failed to object to this prac-

tice of the creditor, the trustee could, however, refuse to pay post-bankruptcy interest on the amount overcharged, on both equitable and legal grounds. In re Tastyeast, Inc., 126 F.2d 879 (3d Cir. 1942), was concerned with post-maturity interest of 30% per annum on a principal amount of which prepaid interest at 21% was a part. The Court of Appeals decided that the 30% was in the nature of a penalty to insure prompt payment, and disallowed it.

■ The cases relied upon by the Referee, involving as they do the allowance vel non of claims resulting from default, illegal actions and penalty, respectively, do not support his position that equitable principles are here controlling. The relative economic positions of the bankrupt and Rosenthal may be surmised from the amount Advance agreed to pay in return for a loan of less than $20,000, but absent fraud, accident or mistake, a court of equity cannot change the terms of a contract. Hedges v. Dixon County, 150 U.S. 182, 189, 14 S.Ct. 71, 37 L.Ed. 1044.

The conditions under which a bankruptcy court, as a court of equity, may invoke equitable principles, are set forth in Manufacturers' Finance Co. v. McKay, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982:

"The mere fact that a party is obliged to go into a federal court of equity to enforce an essentially legal right arising upon a contract valid and unassailable under controlling state law does not authorize that court to modify or ignore the terms of the legal obligation upon the claim, or because the court thinks, that these terms are harsh or oppressive or unreasonable. A party may stand upon the terms of a valid contract in a court of equity as he may in a court of law. 'If he asks no favors, he need grant none. But if he calls upon a court of chancery to put forth its extraordinary powers and grant him purely equitable relief, he may with propriety be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity.'" 294 U.S. at 448, 55 S.Ct. at 447.

That such a contract as the one at bar is "valid and unassailable under controlling state law" is established by Houghten v. Restland Memorial Park, Inc., 343 Pa. 625, 23 A.2d 497 (1942), where the Supreme Court of Pennsylvania cited Manufacturers' Finance in allowing as a claim in a state receivership proceeding, a $20,000 "bonus" note, given along with another note for $20,000, in return for a loan of $20,000, and said:

"In an action at law against the corporation the Houghtens would, by virtue of the statute [section 313 of the Act of 1933, 15 P.S. (Pa.) § 2852–313], have the legal right to insist that the agreement and two notes be enforced strictly according to their terms, and they are not deprived of this right because, precluded by the appointment of a receiver for the corporation from proceeding at law, they were obliged to submit the determination of their claim to a court of equity." 343 Pa. at 635, 23 A.2d at 502.

See also Colonial Trust Co. v. Central Trust Co., 243 Pa. 268, 90 A. 189 (1914), which was cited with approval by the Supreme Court of the United States in Manufacturers' Finance. It is important to note that here, as in Houghten, usury is not an issue; for Advance, as a corporation, by the same statute cannot assert usury as a defense.

An analogous situation, that of interest in excess of the legal rate, has been considered by the Court of Appeals for the Second Circuit. In re Int'l. Raw Material Corp., 22 F.2d 920 (1927) (L. Hand, Swan, and A. N. Hand, JJ.) presented a situation where the bankrupt could not avail itself, by statute, of the defense of usury, and where the sale of the collateral had netted an amount in excess of the debt. The Court of Appeals, in allowing the higher rate of interest, stated:

"Corporate contracts to pay more than the statutory rate of interest have been, and we believe should be, left to the agreement of the parties, and not disturbed, in the absence of fraud or duress." 22 F.2d at 923.

The Referee in his discussion referred to Pa. Uniform Commercial Code 12A P.S. § 2–302 relating to unconscionable contracts. This section permits a Court to refuse to enforce such a contract, or in certain situations to limit an unconscionable clause so as to avoid unconscionable result. But it is clear that Section 2–102 takes a security transaction without the scope of that article in the code. Thus, the cited section does not assist the trustee in avoiding payment of the Rosenthal claim.

In view of the teaching of the *Manufacturers' Finance* case, it seems to this Court that the agreement between Advance and Rosenthal must be enforced according to its terms, that is, that the claim of Rosenthal for the unpaid balance of the $26,000 must be allowed as a secured claim with interest.

This Court recognizes that the result reached here appears inequitable and even unconscionable so far as the unsecured general creditors are concerned. But it is believed that the result is compelled by the authoritative appellate court decisions. If the law is to be changed, it should be by the proper higher court.

One final matter remains for disposition; that of the attorney's collection commission. On brief before the Referee, Rosenthal admitted that the attorney's collection commission of 15% stipulated to in the note and security agreement is, under Pennsylvania law, "subject to revision" and later urged that $7\frac{1}{2}\%$ would be a reasonable figure. The Referee concluded that no attorney's collection commission would be allowable on this claim. Rosenthal has not specified the disallowance of the attorney's collection commission as an assignment of error in its petition for review, but in its brief before this Court it urges that it be allowed a "reasonable counsel fee."

It seems clear that Rosenthal is entitled to a reasonable counsel fee. See Judge Schoonmaker's decision In re Ellis, 296 F. 241, (W.D.Pa.1923). Also see 3 Collier, Bankruptcy, ¶ 63.15 (14th Ed. 1966). The Referee on remand should make a determination of the amount of the attorney's fee to be awarded Rosenthal under all the circumstances.

This matter must be remanded to the Referee with directions to allow the claim of Rosenthal & Rosenthal, Inc., in full as a secured claim, and to allow Rosenthal & Rosenthal, Inc., reasonable attorney's collection fees.