In the Matter of SCHRADER BODY, INC., Bankrupt.

No. 69–14.

United States District Court, W. D. Pennsylvania.

Aug. 27, 1970.

I. Samuel Kaminsky, Johnstown, Pa., for receiver-trustee.

W. Walter Braham, Jr., Kirkpatrick, Lockhart, Johnston & Hutchison, Pittsburgh, Pa., for National Acceptance Co. of America.

## OPINION AND ORDER

MARSH, Chief Judge.

In this petition for review, certified under the Bankruptcy Act, 11 U.S.C.A. § 67(c), a secured creditor, National Acceptance Company of America (NAC), presents two issues for decision, both of which relate to legal consequences arising from stipulated facts. As stated by the Referee, they are:

"1. Is a secured creditor entitled to interest on it's [sic] debt up to the date of payment.

" * * * I found that a secured creditor is only entitled to interest up to the date of sale of the collateral.

"2. Whether attorney's fees for counsel for the secured creditor in the amount of $2,377.27 is fair and reasonable.

"I found that a fair and reasonable fee for the services performed would be $1,000.00."

On the first issue, it is our opinion that the Referee should have allowed the claim of the secured creditor for interest to the date of payment. On the second, the Referee's finding that $1,000 is fair and reasonable should be affirmed.

From the stipulated facts it appears that on November 17, 1965, Schrader Body, Inc., a Pennsylvania corporation (hereinafter sometimes called bankrupt), borrowed $25,000 from NAC, a Delaware corporation with its principal place of business in Chicago, Illinois. Schrader executed a promissory note in the sum of $37,500,[1] and, to secure same, executed a Chattel Mortgage Security Agreement granting to NAC a security interest in Schrader's personal property. Financing Statements were duly filed in compliance with the Pennsylvania Uniform Commercial Code.

Schrader defaulted in the latter part of 1968 and, pursuant to the Security Agreement and note, the full amount of the indebtedness became due and payable. As of December 31, 1968, the amount NAC computed to be due and payable was $20,232.74 (see Ex. B, Stipulation of Facts).

On January 13, 1969, Schrader was adjudicated a bankrupt. On January 14, 1969, NAC filed a "Petition For Leave To Foreclose Security Interests And Secured Proof Of Claim." This petition was denied.

On March 12, 1969, NAC filed a proof of secured claim in the amount of $24,057.51, amended to $23,857.51, which comprised the sum of $18,498 unpaid principal; $1,409.74 interest to December 31, 1968; $647.50 interest from January 1, 1969 to March 12, 1969; $2,377.27 attorneys' fees incurred by NAC for advice, counsel and other legal services "in attempts to secure from the Bankrupt and the Receiver for the Bankrupt the payment

1. The difference of $12,500 between "cash advanced $25,000.00" and "amount of note $37,500.00" is designated as "Expenses per agreement $3,000.00" and "Interest per agreement $9500.00" (Ex. B, Stipulation of Facts). This designation led the court to inquire whether interest was being charged on interest. In letters filed of record, counsel for the trustee advised that it was his "understanding * * * that this was not done." Counsel for NAC advised that counsel for the trustee was correct in his understanding, "as the term [interest upon interest] is understood in the *Vanston* case." [Vanston [Bondholders Protective] Committee v. Green, 329 U.S. 156 [67 S.Ct. 237, 91 L.Ed. 162] (1946).]" Cf. Manufacturers' Finance Co. v. McKey, Trustee in Bankruptcy, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935); In re Advance Printing and Litho Company, 277 F.Supp. 101 (W.D. Pa.1967), aff'd Advance Printing & Litho Co. v. Bentz, 387 F.2d 952 (3d Cir. 1967).

of the moneys due to NAC * * *." Of the $2,377.27 in attorneys' fees, $350 was incurred before bankruptcy and $2,027.27 was incurred thereafter. Collection expenses amounted to $925. The Referee allowed expenses in the sum of $550, of which allowance NAC makes no complaint.

The bankrupt's assets covered by NAC's security agreement were sold at an authorized private sale by the Receiver for $35,000. NAC's first lien was transferred to this fund which was more than sufficient to cover NAC's claim for unpaid principal, interest, costs and attorneys' fees.

Evidently, distribution disputes arose. "Stipulations of Facts Relating to Claim of National Acceptance Company of America" was filed June 1, 1969; the "Affidavit of W. Walter Braham, Jr." pertaining to NAC's attorneys' fees was verified November 14, 1969; and the Opinion and Order of the Referee was dated January 27, 1970.

It seems to be agreed by counsel that the unpaid remainder of the principal debt was paid to NAC by the Trustee in September, 1969, which was six months after the Receiver's sale and, contrary to the assertion of counsel for the Trustee, was about four months prior to the Opinion and Order of the Referee. See letters of counsel filed on the 20th and 22nd of May, 1970.[2]

The Referee, citing Pennsylvania decisions involving Sheriff's sales and Orphans' Court sales and the like, is of the opinion that NAC is entitled to interest to the date of the sale. But bankruptcy sales are subject to a different rule. *Cf.* In re Hershberger, 208 F. 94 (M.D.Pa.1913). It seems well established that a secured creditor is entitled to interest on the unpaid balance of the debt to the date of payment when, as here, the proceeds from the sale of the collateral by a receiver or trustee in bankruptcy is sufficient to pay the debt and interest in full.

In such case, a secured creditor may look to his lien for payment of the interest specified in his security agreement and, also, for payment of his costs and fees as specified therein. Castaner v. Mora, 234 F.2d 710, 712 (1st Cir. 1956); In re Macomb Trailer Coach, 200 F.2d 611 (6th Cir. 1952); Oppenheimer v. Oldham, 178 F.2d 386, 389 (5th Cir. 1949); United States v. Sampsell, 153 F.2d 731 (9th Cir. 1946); Wilson v. Dewey, 133 F.2d 962 (8th Cir. 1943); Investors Divers. Serv. Inc. v. Reconstruction Finance Corp., 153 F. Supp. 595, 599 (D.Mass.1957); In re Tele-Tone Radio Corp., Etc., 133 F.Supp. 739, 752 (D.N.J.1955); In re Hershberger, *supra;* In re Torchia, 185 F. 576, 584 (W.D.Pa.1911), rev'd on other grounds, 188 F. 207 (3d Cir. 1911); Remington on Bankruptcy, vol. 2, § 916, p. 390 (rev. ed.).

The fact that the high rate of interest specified by the parties seems harsh and oppressive to a court of bankruptcy is not a reason to change the terms of valid and subsisting contracts. Manufacturers' Finance Co. v. McKey, Trustee in Bankruptcy, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935), citing an Illinois case, viz., Tennant v. Joerns, 329 Ill. 34, 160 N.E. 160 (1928); In re Advance Printing and Litho Company, 277 F.Supp. 101 (W.D.Pa.1967), aff'd 387 F.2d 952 (3d Cir. 1967). No allegation has been made of fraud, accident or mistake. Nothing appears in the record which indicates that NAC was responsible for the delay in payment of the unpaid principal amount after the Receiver's sale was consummated.

We consider next the issue of fees. Validity and enforceability of stipulations for attorney's fees is largely a matter of local law, Security Mortgage Co. v. Powers, 278 U.S. 149, 154, 49 S.Ct. 84, 73 L.Ed. 236 (1928), but the reasonableness and enforceability in bankruptcy are matters of federal law. Collier on Bank-

---

2. NAC admits that interest was paid on the delinquent principal amount to January 13, 1969. NAC's brief, p. 4.

ruptcy, Vol. 3A, 14th ed., p. 1847, note 8; In re Pack-It, Inc., 158 F.Supp. 148 (D.N. J.1958). We see no legal obstacle in the case at hand to payment of the stipulated attorneys' fees for services rendered to NAC before and after the bankruptcy. *Cf.* In re Ferro Contracting Co., 380 F.2d 116 (3d Cir. 1967).

■ The note and security agreement provide that they should be governed in all respects by the laws and decisions of the State of Illinois. Although counsel have not cited any Illinois authority pro or con, we hazard an opinion that the stipulations relating to attorney's fees contained in the note and security agreement prepared in Illinois would be valid and enforceable in that State. *Cf.* Manufacturers' Finance Co. v. McKey, Trustee in Bankruptcy, *supra*, 294 U.S. page 453, 55 S.Ct. 444, 79 L.Ed. 982, which case originated in the Northern District of Illinois.

■ NAC argues that its claimed attorneys' fees of $2,377.27 are reasonable for the time spent and the services performed because of the "ill-advised opposition of the Trustee" to "the payment of any sums to NAC".[3] Nonetheless, the reasonableness of the fees was a matter to be determined by the experienced Referee who not only had first-hand knowledge of the disputes involved and all the factors necessitating services of counsel, but was also in the best position to judge the value of those services. The court is bound to accept the Referee's determination of the reasonable value of the services rendered unless it appears to be clearly erroneous or his discretion plainly abused, neither of which conclusions is apparent from the record.

■ No evidentiary hearing on the value of services rendered was held by the Referee. However, the Trustee has not traversed the accuracy of the expended hours listed in the affidavit of Attorney Braham, or controverted the

contingent fees recommended by the Commercial Law League of America and the National Association of Credit Men, or the minimum fee bill of the Allegheny County Bar Association, all of which are based upon what a creditor is expected to pay in order to obtain a competent attorney to collect a claim. But these recommendations for contingent fees do not purport to set standards of reasonableness for a court of bankruptcy to follow in evaluating the services of attorneys for a secured creditor. The expertise and experience of the Referee is best relied upon to achieve uniformity in this type of bankruptcy problem, and to prevent an unjustifiable enrichment of one creditor over another. See: Collier on Bankruptcy, vol. 3A, 14th ed., p. 1854, *cf.* Advance Printing and Litho Company, *supra*, 277 F.Supp. at 105; In re Pack-It, Inc., *supra*, 158 F.Supp. at p. 153.

An appropriate order will be entered.

---

3. NAC's brief, pp. 12–13. From the record, there does not appear to have been any serious contest over the amount of

unpaid principal ($18,498) and interest payable to the date of bankruptcy.