[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant in this action, the Commissioner, Department of Revenue Services ("Commissioner"), moves for summary judgment in this tax appeal initiated by the plaintiff, the City of Stamford ("City") on the basis that the Commissioner is entitled to judgment as a matter of law. The City objects to the motion on the basis that there is no obligation to collect or pay the sales tax and if there were such an obligation, equity would disavow such an obligation.
The main issue in this appeal is whether this court may use its equitable powers to grant relief to the City from the payment of sales taxes and interest thereon due to claimed inequities between the contractual relation of the City and the state department of transportation arising from the operation of the Stuart McKinney Transportation Center, also known as the Stamford Transportation Center.
On June 2, 1982, the State of Connecticut, through the Connecticut department of transportation, entered into a lease with the City on 8.6 acres of state-owned land located in Stamford comprising the existing Stamford railroad station and adjacent property. The lease recited that the parties, in conjunction with the Federal Highway Administration, CT Page 15444 intended to construct a new railroad station, parking facilities, a multi-modal transportation terminal and center island rail platforms on the leased parcel. The lease further provided that the City desired to lease the premises, including the present and future improvements, for the operation of a railroad station, parking facility, and a multi-modal transportation terminal. The term of the lease ran from October 2, 1980 to June 30, 2015, with successive five year extensions by mutual agreement of the parties.
The scope of the lease, as recited in Article I § 1.04, provided that "[i]t is the intention of the parties that the City will lease the Premises and the Transportation Center from the State for no monetary consideration. Furthermore, the City shall operate and maintain the Premises and Transportation Center and shall receive all revenue and pay all expenses in connection with the operation and maintenance as provided in this Agreement."
Pursuant to the terms of the lease, the City entered into possession of the premises and operated the parking facility on the premises during the audit period in issue, October 1, 1991 to August 31, 1996. From October 1, 1991 through June 30, 1995, the City did not collect and/or pay to the state the sales tax on motor vehicle parking services provided by the City on the premises. From July 1, 1995 through the remainder of the audit period, the City collected and remitted to the state the sales tax on the services. The Commissioner assessed the City the sum of $246,287.50, plus 9% interest, as a result of the failure of the City to pay the sales tax on the parking services it provided at the Stamford Transportation Center from October 1, 1991 through June 30, 1995.
The City alleges in its complaint that there was no obligation to either collect or pay the sales tax to the Commissioner based upon the following arguments:
 1. The City is not a retailer or seller in the operation of the parking garaged within the meaning of General Statutes § 12-407.
 2. The state agreed in the lease, pursuant to § 2.05, that the City was to have no net tax obligation in the operation of the parking garage.
 3. Pursuant to § 7.02 of the lease, the state was to share the additional cost of the operation of the parking garage.
 4. By not objecting to the City's accounting, the CT Page 15445 state ratified the City's noncollection of the tax.
 5. The City was acting as the agent of the state and it operated the parking garage for the benefit of the state.
In the City's brief in opposition to the Commissioner's motion for summary judgment, it points out that the lease between the City and the state was terminated effective April 14, 2000; however, the City does not explain how the termination of the lease in 2000 would affect its liability to pay the sales tax during the audit period. The City further argues that the Commissioner's motion for summary judgment is addressed to legal issues and does not cover the equitable issues raised by the City. The City claims that even if the state is correct in all of its legal arguments, the City still has a colorable claim for equitable relief
We will first address the legal issues raised by the Commissioner, and then address the equitable issues raised by the City to determine whether the Commissioner's motion for summary judgment should be granted. The pertinent parts of General Statutes §§ 12-407[1] and 12-408[2]
show that the City, by leasing the parking garage in the Stamford Transportation Center from the state and operating the garage for consumer parking at the Center, comes within the definition of "retailer" and "seller" providing the service of motor vehicle parking. The City claims that it is not a "retailer" or "seller" engaged in the "business" of rendering parking services for a consideration because pursuant to General Statutes § 12-407(10), "business" includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect, "and the Commissioner has not proven that the City benefitted from the business of running the Center under the lease. However, while the affidavit of Thomas Hamilton attached to the City's memorandum in opposition to the motion for summary judgment states that he is "unaware of any loss of benefit to the citizens of Stamford as a result of the termination of the lease and the accompanying cessation of operation of the Transportation Center by the City," (Hamilton Affidavit, para. 6), Hamilton also attests that in recent years there was a "profit" from the operation of the Center, and that as part of the agreement terminating the lease, the state agreed to reimburse the City for the various costs, losses and liabilities it incurred during its operation of the lease, and further agreed to assume responsibility for as-yet unliquidated liabilities. (Hamilton Affidavit, paras. 4, 5.) Thus, in its opposition, the City does not raise a genuine issue of material fact regarding whether it was a retailer or seller engaged in the business of providing parking services at the Center, only claiming that its lease with the state was not CT Page 15446 profitable.
Article V of the lease provides "for the construction of a 750 space parking garage with a pedestrian bridge to and from the railroad station, a 100 space parking lot, and necessary access roads to parking and station facilities. Article VIII provides that the parking facilities are intended for the use of intercity and commuter rail passengers. Article VIII further provides that the City will operate the parking facilities and set the initial parking rates for the public by mutual agreement with the state. Thereafter the City is authorized to raise or lower the public parking rates unilaterally. Article IX permits the City to collect all revenue from the parking facilities and to pay for the maintenance and operating expenses of the Transportation Center. As to the obligation to pay taxes, Article II, § 2.05 provides that the City will pay the property taxes on the Transportation Center. Article VII, § 7.02 obligates the City to comply "with all applicable State and local laws and ordinances with respect to the operation of the facilities. The City agrees to comply with and conform to all the laws of the United States of America, the State of Connecticut, and the ordinances and regulations of the City of Stamford in which the Premises and the Transportation Center are located."
Analyzing the terms of the lease cited in this decision, only one conclusion can be drawn, and that conclusion is that the City was a retailer and a seller as that term in defined in § 12-407 and is therefore liable under § 12-408 for collecting and remitting sales tax on the motor vehicle parking services provided to the public during the audit period. There is no criteria set out in §§ 12-407 or 12-408
that the collection of a sales tax by a retailer is dependent upon the successful operation of the service provided by the retailer.
We next turn to the equitable arguments raised by the City. The equitable issues raised by the City in opposition to the motion for summary judgment are based upon the relationship between the City and the state department of transportation. The City claims that the department of transportation's failure to object to the City's annual accounting, which apparently disclosed the non-collection of the sales tax by the City, was binding on the Commissioner, thereby preventing the Commissioner from collecting the sales taxes due from the operation of the parking facilities. The City further alleges that the City was the agent for the state and that all revenues are for the benefit of the state. We read this allegation to say that the City claims to be exempt from the obligation to collect the sales tax since it was an arm of the state. The lease between the City and the department of transportation specifically disavows any relation between them as principal and agent. Section 1.14 of the lease provides: "This Agreement is not intended to CT Page 15447 create any partnership, or joint venture, or relationship or principal and agent between the parties." Furthermore, the City has not cited any statutory provision that would exempt it from the payment of the sales tax from its operation of the public parking garage at the Stamford Transportation Center.
The City, in its brief, contends that it entered into an unprofitable lease with the state, and therefore, since the state encompasses both the department of transportation and the department of revenue services, this court should use its equitable powers to offset the payment of the sales tax to the state from the losses the City incurred in its operation of the Transportation Center. The City has not alleged fraud or mistake upon the part of the department of transportation. The contract between the state and the City was an arms length transaction, voluntarily entered into by both parties. We note that § 14.08 of the lease provides for the approval of the contract by the Secretary of the Office of Policy and Management, the Attorney General and the State Properties Review Board, as well as the Corporation Counsel of the City. In addition, the lease noted that the City's Planning Board, Board of Finance, and Board of Representatives had to approve funding obligations of the City in excess of $3,702,000. The City entered into this contract and the obligations to be performed under the terms of the contract with its eyes wide open. The City has offered no evidence in opposition to the motion for summary judgment that would show that a material issue of fact remains regarding this finding.
Taxes, such as sales and use taxes, are imposed by statute. See General Statutes § 12-408; Hartford Fire Ins. Co. v. Brown, 164 Conn. 497,505, 325 A.2d 228 (1973). "The relationship between a taxpayer and the state or its collecting agency is not one of debtor and creditor nor is it regulated by a prior agreement, as between individuals." Id. Since a tax is not a debt in the ordinary sense, it does not rest upon either implied or express contract, and "is not subject to setoff unless expressly so made by statute." Cromwell v. Savage, 85 Conn. 376, 377,82 A. 972 (1912).
We find no merit to the City's claim that it was not obligated to collect and pay the sales tax arising from its operation of the public parking garage in the Stamford Transportation Center. We further find that regardless of whether the contract between the department of transportation and the City was financially rewarding to the City, equity will not interfere where there is no fraud or mistake. See Manufacturers'Finance Co. v. McKey, 294 U.S. 442, 449, 55 S.Ct. 444, 79 L.Ed. 982
(1935).
One final claim is made by the City in regard to obtaining equitable CT Page 15448 relief The City claims that the Commissioner promulgated an amnesty tax program in 1995. The City argues that under this program, the legislature authorized the Commissioner to reduce interest on back taxes from 18% to 12%. General Statutes § 12-38 obligates municipalities to pay only 9% interest on amounts owed to the Commissioner. The City argues that since the amnesty program reduced the interest charged on back taxes by one-third, correspondingly, the 9% interest charged to municipalities should also be reduced by one-third to 6%. The City points out in its brief that the General Assembly did not contemplate reducing the amount of interest charged to municipalities. Basically, the City is arguing that where the legislature failed to provide relief to the municipalities in the way of an interest reduction under the amnesty program, the court, with its equitable powers, should reduce the interest charged to the City to 6%. The simple answer to this argument is the holding of our Supreme Court that "[i]t is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Citations omitted; internal quotation marks omitted.) Leo Fedus Sons Construction Co. v.Zoning Board of Appeals, 225 Conn. 432, 441-442, 623 A.2d 1007 (1993).
If the legislature did not specifically provide for the reduction of the interest rate charged to municipalities from 9% to 6% under the amnesty program, we are not constrained Lo do otherwise.
For the above stated reasons, we grant the Commissioner's motion for summary judgment. No material issue of fact exists regarding the City's liability to collect and pay the sales tax for the parking services it provided as a result of its operation of the parking garage at the Stamford Transportation Center. Judgment may enter in favor of the Commissioner without costs to either party.
Arnold W. Aronson Judge Trial Referee